FRITZ DARROW, Appellant, v. C. H. BRIGGS et al.

Division Two, July 14, 1914.

1. **BREACH OF CONTRACT: Employment: Indeterminate Term: Termination: Abuse of Discretion.** A petition which charges that the period of plaintiff's employment as a member of a college faculty was indeterminate; that is to say, that it was for a period of one year, with the understanding and agreement that he would be retained at the discretion of the board of trustees beyond said first year without any formal employment or renewal of said contract if his educational work was satisfactory and no personal objections could be urged, and that said board by its articles of association and by-laws could remove after said year any instructor when in the judgment of said board the interest of the college shall require it, and further alleging that said board discharged plaintiff, at the end of the first year, without assigning any other cause except that in the judgment of the board the interest of the college required that his term of service should close, does not state a cause of action for damages for a breach of contract, unless it contains further allegations showing that the board abused its broad discretion to terminate his employment.

2. ———: ———: ———: ———: ———: **Teaching Theosophy: Newspaper Controversy.** A board of trustees of a college, whose charter and by-laws forbid any religious or political

test, either in instruction or in the employment of teachers, but authorizing the "board to remove any teacher when the interest of the college shall require it," does not breach its contract by which plaintiff was employed for one year and permanently thereafter "if after said probationary period of one year there is no difficulty," or abuse its discretion, by terminating plaintiff's employment at the end of one year and assigning no other reason than that the interest of the college requires that his term of service should close, where plaintiff has avowed his devotion to the cult called "Theosophy" and has allowed himself to be drawn into heated newspaper controversies with ministers and others in defense thereof— even though he was nagged into such controversy by the intemperate attacks of said ministers. Such dismissal was in the interest of the college, and was not an abuse of the board's discretion.

3. CONSPIRACY: Petition: Cause of Action. In an action on the case in the nature of a writ of conspiracy, the plaintiff may have judgment against one defendant, although he may have no cause of action against the others. But the action can only be sustained against several defendants where the acts complained of would sustain an action against one of them. An allegation that all defendants conspired together does not authorize the defendant to maintain his action when he could not maintain it against one of them if he were sued alone. A conspiracy of itself furnishes no cause of action, because from the mere forming of it no possible damages can accrue.

4. ———: ———: ———: Libels and Slanders: Breach of Contract. Although the petition contains averments of libels and slanders uttered by one defendant sufficient, if properly pleaded with a proper legal setting, to put him on his defense for actionable utterances, yet if the whole trend of the other allegations is that the other defendants had no part in them, and, not seeking to hold him or the others liable for libel, but, by a charge of conspiracy, seeks to recover damages from the others for a breach of a contract of employment committed by said others, induced thereto by a communication to them of said libels by said defendant, but further charging that said defendant in communicating them to the others acted alone, the petition does not state a cause of action for a conspiracy resulting in plaintiff's discharge from such employment.

5. PLEADING: Incoherent: Non-Understandable. A petition whose allegations are incoherent and present no understandable issues, is bad on demurrer, since it is still the rule that the pleader is not allowed, by inserting doubtful and uncertain allegations in his pleading, to throw upon his adversary the hazard of correctly interpreting its meaning.

Appeal from Greene Circuit Court.—*Hon. James T. Neville,* Judge.

AFFIRMED.

*Delaney & Delaney* for appellant.

(1) Under the allegations of the petition, the plaintiff had a subsisting contract of employment as a member of the faculty of Drury College. The dismissal of plaintiff without just cause, as it was, is a breach of such contract and would entitle plaintiff to recovery against Drury College. (2) Under the allegations of the petition, the defendant Briggs was guilty of slander and of libel. His language and writings were calculated to hold plaintiff up to general ridicule and contempt. Briggs did more than merely criticise the religious beliefs of plaintiff. These criticisms affected the standing of plaintiff as a man, were so intended, and exposed him to ridicule and contempt. They affected his standing as an educator and as a member of the faculty of Drury College, were so intended, and exposed him to ridicule and contempt with reference to his profession. His fairness, integrity, honesty and manliness are directly questioned, and it is charged specifically that mentally and morally he is unfit to be an educator, especially an educator of Drury College. The language and writings bring this case squarely within the principles declared in the following authorities: St. James' Academy v. Gaiser, 125 Mo. 517; Kemble v. Sass, 12 Mo. 499; Price v. Whitely, 50 Mo. 131; McGinnis v. Knapp, 109 Mo. 131; Spurlock v. Lombard Co., 59 Mo. App. 225; Baldwin v. Walser, 41 Mo. App. 243. If it be actionable, as declared in the St. James' Academy v. Gaiser, supra, to threaten to boycott a college for tolerating dancing, certainly it is actionable to threaten a college with a boycott, as alleged in petition, to-wit, for keep-

ing in its faculty a man who is unmanly; who is mentally and morally unfit to be an educator; who is declared to be an ally of his Satanic Majesty; who is untruthful; who is guilty of duplicity. Wildie v. McKee, 111 Pa. St. 335; Gregory v. Brunswick, 6 M. & G. 205; Morasse v. Brochu, 151 Mass. 574; Odgers on Libel and Slander, p. 89; Crump v. Com., 84 Va. 927; Jackson v. Stanfield, 137 Ind. 609. A libel may be actionable even though motive be good. Com. v. Snelling, 15 Peck, 337; Jellison v. Goodwin, 43 Me. 287; Shurtleff v. Parker, 130 Mass. 293. Words which on the face of them when falsely published of a party in connection with his trade or profession must necessarily injure him with respect thereto, or which directly tend to the prejudice of such person in his profession, are actionable. Newell on Defamation, sec. 1, p. 168; Morasse v. Brochu, 151 Mass. 567; Price v. Conway, 134 Pa. St. 340; Odgers on L. & S. (2 Ed.), 65; Williams v. Davenport, 42 Minn. 393; Railroad v. Richmond, 73 Tex. 568; Sanderson v. Caldwell, 45 N. Y. 398; Hayes v. Press Co., 127 Pa. St. 642; Collins v. Dispatch Pub. Co., 152 Pa. St. 187; Kemble & Field v. Sass, 12 Mo. 499; Price v. Whitely, 50 Mo. 439; Burke v. Fay, 128 Mo. App. 690. A combination to injure the business of another by threatening to injure the business of others who have business relations with them, is an unlawful combination. Lohse Co. v. Fuelle, 215 Mo. 421. So the threat to injure Drury College, if it retained Prof. Darrow, the plaintiff, is a conspiracy against plaintiff. Nor can the claim of privilege on the score of religious criticism be invoked. This claim of privilege could only be colorable, as the individual is attacked as well as the creed. Besides, we allege malice and falsity. There is no privilege where there is malice. State v. Derry, 20 Mo. App. 552; Landis v. Campbell, 79 Mo. 433. And, at all events, these are questions for the jury. Const. of Missouri, art. 2, sec. 4; Lewis v. Humphries, 64 Mo.

App. 466; State v. Armstrong, 106 Mo. 395; St. James' Academy v. Gaiser, 125 Mo. 517. But we are not suing either for breach of contract or for libel or for slander or for any two or for all together, as was erroneously assumed by the trial court. So assuming, the court held there was a misjoinder of parties and misjoinder of causes of action and held the petition bad for duplicity or multifariousness. The court consequently sustained the separate demurrers and dismissed the petition. We are suing on the case for conspiracy, and allege that the objects of the conspiracy were: To defame and injure plaintiff as a man and to expose him as a man to public contempt and ridicule; to defame and injure plaintiff as an educator, to represent him as unfit mentally and morally for his profession generally and especially as a member of the faculty of Drury College. The purpose of defendants was to secure plaintiff's dismissal from such faculty, notwithstanding a valid, subsisting contract, on the ground that his conduct as teacher and his relations to such college were unfair, unmanly, dishonest, underhanded and despicable. And we allege that by such means the dismissal of plaintiff was secured and that the resolution of dismissal justified inferences unfavorable, injurious and damaging, financially and otherwise, to him, plaintiff. And we contend that the facts stated in the petition constitute a conspiracy. (3) Conspiracy in its civil aspect, considered as a ground of an action on the case for damages, partakes of none of the distinguishing characteristics of the criminal offense. The "gist" in a civil action is the damage, not the conspiracy. 6 Am. & Eng. Ency. Law (2 Ed.), 873 and notes. Even if the facts pleaded do not state a cause of action against all the defendants, yet, if the petition states a good cause of action against two of them, it must be sustained as to them. And even where a conspiracy is charged, if the facts pleaded (or the evi-

dence adduced) fails in the conspiracy, recovery can be had against the one actually committing the wrong. Halborn v. Naughton, 60 Mo. App. 100; Hunt v. Simonds, 19 Mo. 588; 6 Am. & Eng. Ency. Law (2 Ed.), 872-873. Therefore the court erred in sustaining all of the demurrers. So if defendant Briggs had the legal right to criticise the religious views of plaintiff, he should have done so without assailing plaintiff personally. It is one thing to assail the creed; it is quite another to ridicule and revile the follower. It is one thing to say that Theosophy is a "fad" and should not stand before the verities of the Christian religion, but is quite different to say that plaintiff is proselyting in an underhanded, unmanly way; covertly, surreptitiously, dishonestly taking advantage of his position on the staff of a Christian college. So, Briggs being liable, under the allegations of petition showing agreement, encouragement, participation and overt acts by the defendants George and Drury College, they also are liable. (4) One need not be an original contriver of the mischief. Those who subsequently enter into a design already formed become equally guilty, and the subsequent acts relate to the original design. State v. Walker, 98 Mo. 95; 6 Am. & Eng. Ency. Law (2 Ed.), 485, notes. So the fact that George did not join in the conspiracy until Drury College was threatened by Briggs and by the individual members of the Ministerial Alliance is no defense. Nor is it a defense for the college to say, "We joined only in the actual dismissal." That was the object, the finishing touch in the conspiracy, and the college, under the allegations of the petition, not only made itself a party to the transaction, but so worded the resolution as to justify unwarranted inferences and thus increase the damage and intensify the wrong. (5) The petition is not vulnerable to the charge of being multifarious. Distinct facts forming a series of transactions tending to a common end do not con-

stitute multifariousness. McGlothlin v. Henery, 44 Mo. 350; Mayberry v. McClurg, 51 Mo. 256. Matters and parties may be joined and united if there is some common point of interest. Bliss Code Pldg., sec. 110. No matters, however multifarious, will operate to make a pleading double that altogether constitute by connected statement and relation one entire transaction. Bliss Code Pldg., sec. 294; Perkins v. Baer, 5 Mo. App. 70; Hess v. Ganz, 90 Mo. App. 439.

*W. M. Williams* for respondent Briggs.

(1) The petition attempts to plead several distinct causes of action, in which the defendants have no joint interest; one for breach of contract against Drury College, another for libel against defendants George and Briggs, and still another for slander against defendant Briggs. The demurrer was properly sustained. R. S. 1909, sec. 1795; Stalcup v. Garner, 26 Mo. 72; Otis v. Mechanics Bank, 36 Mo. 128; Fadley v. Smith, 23 Mo. App. 92; Ederlin v. Judge, 36 Mo. 351. (2) Plaintiff was not employed for any specific term by Drury College. His tenure, by express agreement, was subject to the discretion of the board of trustees, and could be terminated at any time when in the judgment of the board the interest of the college might require it. 26 Cyc. 972. (3) The board of trustees having the discretion to remove the plaintiff from its faculty whenever deemed proper by the board, there can be no actionable conspiracy by said college and its co-defendants to bring about that result. "An action will not lie for a conspiracy to do a lawful act." Hunt v. Simmons, 19 Mo. 583; Hunt v. Johnston, 23 Mo. 432; Nations v. Pulse, 175 Mo. 94. (4) No cause of action was stated against defendant Briggs. Every criticism and statement attributed to him was based upon the admitted fact that plaintiff was attempting to propagate the teachings of theosophy

while holding a position in Drury College. These were the facts stated by defendant Briggs, which confessedly were true. Everything else attributed to said defendant were his deductions from these facts and his criticism of plaintiff on account thereof. Cook v. Publishing Co., 241 Mo. 353; 25 Cyc. 401; Cherry v. Des Moines Leader, 54 L. R. A. 859. But a suit for libel against defendant Briggs, if well founded in the allegations of the petition, could not be joined with an action for breach of contract against his codefendants, and the demurrer was properly sustained on that ground. Cook v. Pub. Co., 241 Mo. 326; Branch v. Knapp & Co., 222 Mo. 580; 25 Cyc. 401.

*V. O. Coltrane* for respondents George and Drury College.

FARIS, J.—Appeal from a judgment of the circuit court of Greene county, sustaining a demurrer to the following petition (caption omitted), to-wit:

"Plaintiff states that the defendant Drury College is a body politic and an educational institution and was organized July 2, 1873, under article 8 of chapter 37 of Wagner's Statutes of Missouri.

"That under such original articles of incorporation and the by-laws governing the body, said Drury College was denominational in this: that the said articles and by-laws, amongst other things provided, that a majority of the board of trustees thereof provided for by such articles and by-laws must profess the faith and creed of the Christian organization known as the Congregational Church.

"That on the 8th day of May, 1905, the organization known as the Carnegie Foundation was organized and created under the laws of the State of New York.

"That by the charter of such organization and its by-laws, it is provided that any and all institutions of learning that do not provide for a prescribed re-

ligious test for its trustees, or for its faculty, or for its instructors, or for its students, are and become eligible to become the beneficiaries of the fund provided for by said Carnegie Foundation, and when the said institutions are, by and after proper application, placed upon the accepted list of said Carnegie Foundation, the professors thereof, as prescribed by the charter, by-laws, rules and regulations of said Carnegie Foundation, become eligible for retirement and become eligible to receive the benefits prescribed by said Carnegie Foundation.

"That the object of said Carnegie Foundation in providing such donations for the benefit of such educational institutions and for the teachers and professors thereof is to elevate the standard of such institutions and to elevate the standard of the teachers and professors thereof by insuring to said teachers and professors an income in the event of disability arising from years of service and to insure and encourage independence of thought.

"That prior to October 1, 1909, to-wit, on the —— day of ——, 1908, the said Drury College for the purpose of securing the benefits conferred by the said Carnegie Foundation amended its said charter and by-laws by striking from the said charter and by-laws the provision heretofore set forth touching the organization of its trustees. Plaintiff states that by the charter and-laws of said college which were in force at all times hereinafter mentioned, it was further provided that 'no religious or political test as a condition precedent to the enjoyment of all the advantages afforded by Drury College for study and instruction shall ever be established or allowed by the board of trustees.'

"That pursuant to said change in said articles said Drury College became eligible, and by application in due form prior to September, 1907, was placed upon the accepted list of said Carnegie Foundation, and by

reason of the premises its teachers and professors were free from any political or religious test.

"Plaintiff states that by profession he is an educator and qualified himself for such profession and has devoted himself entirely to such profession since July, 1906, and was a teacher at all times herein mentioned.

"Plaintiff states that on or about the —— day of September, 1907, the said Drury College named him as one of its faculty and retained him as a professor in Greek in said institution.

"Plaintiff states that by the terms of said employment he was engaged as member of said Drury College faculty for a period of one year, with the distinct promise and condition that if after said probationary period of one year there was no difficulty the said employment became permanent.

"Plaintiff states that the true meaning and intent of said engagement is that if the educational work of plaintiff was satisfactory and no personal objections could be urged that said employment would be permanent. But plaintiff says it was not contemplated that the question of the religious convictions and beliefs of plaintiff should be considered a 'difficulty' within the meaning of said employment, and that the failure to retain plaintiff as hereinafter set out and for the reasons hereinafter stated after he had passed said probationary period were breaches of said contract of employment, as plaintiff further states that in the notice of his engagement it was distinctly stated that he would become a permanent member of said faculty if his first year's service as an educator were satisfactory.

"Plaintiff states that at said date and at all dates hereinafter mentioned he was a citizen of the United States and of the State of Missouri, that he was and is guaranteed religious freedom and the right of conscience and the right to worship according to the dic-

tates of his conscience as provided by the Constitution of said United States, Amendment Number One, and by the Constitution of the State of Missouri, article 2, section 5.

"Plaintiff states that at the dates hereinafter set forth there was in the said city of Springfield a public library, known as the Carnegie Library, and the same was and is maintained by general taxes levied upon the citizens of the said city of Springfield, Missouri, and is also partially maintained, so far as literature is concerned, by contributions of books and magazines by citizens generally.

"Plaintiff states that on January 18, 1898, he was and at all times since has been a member of the Universal Brotherhood and Theosophical Society, the principal purpose of which is to teach universal brotherhood, to demonstrate that such brotherhood is a fact in nature, and by its teachings to make such brotherhood a living power in the life of humanity; and the subsidiary purposes of which are the study of ancient and modern religious science, philosophy and art and to investigate the laws of nature and the divine powers in man.

"Plaintiff states that at all times hereinafter mentioned he was and is now a Mason and that at all times herein mentioned he followed the profession of teaching as a livelihood.

"Plaintiff states that at all times hereinafter mentioned the defendant J. H. George was and now is the president of the defendant Drury College.

"Plaintiff states that at all times hereinafter mentioned the defendant C. H. Briggs was and now is a minister of the Gospel, professing the Methodist faith, and at the times hereinafter mentioned was pastor of the St. Paul Methodist Episcopal Church in the city of Springfield, Missouri.

"Plaintiff states that on or about the —— day of December, 1909, in the exercise of his rights, he

caused to be tendered to the Carnegie Library a work, entitled the 'Key to Theosophy,' said work having been written to expound, interpret and elucidate the teachings of said Theosophical Society and Brotherhood.

"Plaintiff states that the defendants, C. H. Briggs and J..H. George and the said Drury College, through and by its board of trustees on the said —— day of December, 1909, knew that the plaintiff was a member of the said Theosophical Society and Brotherhood and for such reason determined to defame and injure plaintiff as a man and to destroy his influence as a teacher and to oust him from his position as a teacher in said Drury College and to drop him from the faculty of said college and to prevent his retention and employment as a member of said faculty.

"Plaintiff states that the defendants knew of the tender of said book, 'Key to Theosophy,' to said library, and with such knowledge and for the purposes aforesaid, and for the purpose of depriving plaintiff of his said constitutional rights and driving him from the said city of Springfield, Missouri, conspired and confederated to do the things hereinafter set forth and complained of:

"That is to say, they combined and confederated to interfere with his constitutional rights and to prevent him from enjoying the same; to represent him as a man morally unfit to be a teacher; to excite ill will and prejudice against him and thus affect his standing as a man and his position and standing as a teacher; to hold him up to ridicule and contempt; to secure his dismissal from Drury College and to prevent his retention as a member of its faculty and to prosecute and drive him from said city of Springfield and to injure him financially by urging his retirement from said faculty, and by lessening and affecting his opportunity for employment elsewhere as a teacher.

"Plaintiff states that in furtherance of said design and conspiracy, the defendant C. H. Briggs induced the librarian of said public library, who was then and there of said church of which defendant Briggs was pastor, to refuse to accept and receive said literature so tendered and induced said librarian to refuse to place on the same plane as other books in said library said 'Key to Theosophy' and other Theosophical books and magazines by plaintiff caused to be tendered.

"Plaintiff states that this was the first step of the defendant Briggs to humble and injure plaintiff, and that said Briggs caused the said librarian to discriminate against said literature and especially said book, 'Key to Theosophy,' on the alleged ground that said book was antagonistic to the teachings of the so-called Christianity of said Briggs and on the ground that it was not a proper book for the public mind.

"Whereas in truth and in fact all of the teachings of said book, 'Key to Theosophy,' tend to the uplifting of humanity and to the inculcation of morality and contains nothing that renders it unfit for reading and study.

"Plaintiff states that he directed the attention of the board of trustees of said library to said attempted discrimination and the said board of directors resolved that said book was a fit and proper work to be accepted and received and exposed for the use of the patrons of said library.

"Plaintiff states that thereupon and in furtherance of said design to deprive him of his said constitutional rights and to injure plaintiff in his character as a man and his standing as an educator, the said Briggs on the 12th day of March, 1910, falsely and maliciously represented and stated to the defendant J. H. George, who was then the president of said Drury College, that plaintiff 'is an atheist and

unfit to be an instructor in said Drury College,' then and thereby charging, implying and intending to charge and imply that plaintiff as a so-called atheist was morally unfit to be an instructor.

"And said Briggs at said time demanded the retirement of plaintiff from said Drury College and threatened a boycott against said college by a body known as a Ministerial Alliance of Springfield, Missouri, thereby intending to threaten and thereby threatening that if plaintiff were retained by said Drury College the influence of said Ministerial Alliance would be exerted to injure said college financially by keeping students from entering said college and thereby intending to bring about the removal of plaintiff from the faculty of said college under threat of said boycott.

"Plaintiff states that said action was directed against him solely on account of his (plaintiff's) membership in said Theosophical Society and not on account of any lack of requirements demanded of him as a member of said Drury College faculty and not on account of any moral or mental delinquencies or deficiencies of plaintiff.

"Plaintiff states that it is not true that he (plaintiff) is an 'atheist,' as said defendant Briggs well knew, and plaintiff says it is not true that he was unfit to be an instructor in said college, as defendant Briggs well knew.

"Plaintiff states that after such attack, the said Briggs and the defendant J. H. George conspired and confederated to humiliate plaintiff, injure him as an educator and as a man and to force him to resign and retire from said faculty, and failing in which they conspired to secure a resolution of the board of trustees of said college to refuse to retain plaintiff as one of its faculty.

261Mo17

"Plaintiff states that in furtherance of said design and conspiracy, the defendant Briggs on Sunday, March 13, 1910, in and from the pulpit of the said St. Paul Methodist Episcopal Church in the city of Springfield, Missouri, in the presence and hearing of a large congregation of men and women, falsely and maliciously said and in a defamatory manner spoke of and concerning plaintiff certain false and defamatory words of the substance following, to-wit:

" 'The library has become the active agent and assistant of the evil one, his Satanic Majesty, because it has accepted a donation of a work from a scatterbrained professor who is a Theosophist,' meaning thereby and intending to convey the meaning and being so understood by his auditors that the Carnegie Library aforesaid through the action of its board of directors had reported favorably upon the question of the character of the book, 'Key to Theosophy,' donated by plaintiff as aforesaid, and its acceptance by said board, and that by reason thereof the plaintiff was furthering and advancing evil; and meaning thereby and intending to convey the meaning thereby and thereby conveying the meaning and the meaning being so understood by his auditors that plaintiff was deficient and lacking in mental and moral attainments and was 'scatter brained,' and not fitted either mentally or morally to discharge the duties of his profession as a teacher and especially as a teacher and member of the faculty of Drury College.

"Plaintiff states that in furtherance of said design and as evidence thereof, the defendant George on the 15th day of March, 1910, thanked the defendant Briggs for the accusation made and lodged against plaintiff.

"Plaintiff states that in furtherance of said design to injure and punish him on account of his said religious convictions, and with the intention of discrediting him and forcing him to lose his said position

as teacher, the said defendant Briggs on March 21, 1910, at a meeting of said Ministerial Alliance, it being a voluntary association of ministers of the Gospel in Springfield and composed of all denominations, spoke of plaintiff in the hearing and presence of divers persons, members of said Alliance, false and defamatory language of the substance following, to-wit:

" 'He,' meaning plaintiff, 'is an atheist and unfit to be an instructor,' and at said meeting declared that 'I (Briggs) have demanded of Dr. George, president of Drury College, action at the meeting of the board of trustees of said college for the retirement of Professor Darrow,' thereby implying that plaintiff was unfit to be retained in the faculty of said college 'and intending to convey said meaning, and plaintiff states that the said statement was so understood by the auditors at said meeting.

"In furtherance of said design against plaintiff and as showing malice on the part of said conspirators, plaintiff states there was present at said last mentioned meeting one H. A. Schuder and the said Schuder attempted to declare and explain to the said Ministerial Alliance and those present that plaintiff was not an 'atheist' as declared by said Briggs, but the said Briggs interrupted the said Schuder and said declaration and refused to let the said Schuder proceed with his statement.

"Plaintiff states that said action and said statement was pursuant to and in execution of the agreement and understanding of said defendants Briggs and George and was intended and designed to influence said Ministerial Alliance and induce said association to take action as an association in a concerted demand on said Drury College for the retirement of the plaintiff and to afford said defendant George a pretended justification to bring the matter before the board of trustees of Drury College

and afford a pretended justification of the action of such board in retiring plaintiff from the faculty of said college.

"Plaintiff states that while said Ministerial Alliance as a body refused to lend itself to the designs of the defendants, yet as a result of the conspiracy of the defendants and said statements of defendant Briggs before said Alliance, the following appeared in the Springfield Republican, a newspaper published in Springfield, Missouri, on April 10, 1910, on the authority of the president of the Alliance, to-wit: 'That while the individual members of the Alliance might have made such a request (viz.: a request on Dr. George and the trustees of Drury College at the instigation of defendants to remove plaintiff) the organization had not officially taken the matter up.'

"In furtherance of said conspiracy between said George and Briggs, and especially in furtherance of the design to dismiss plaintiff from his position as professor aforesaid, on account of his religious convictions, but at the same time intending to conceal the real reasons for such action and intending to find a pretext for such action, plaintiff states the following: That he was on April 6, 1910, a member of the College Discipline Committee of said Drury College, and a meeting of said committee, for the consideration of college matters of discipline, was called for said April 6th, and that said George, acting in concert with said Briggs for the purpose herein stated, notified all members of said committee of said meeting except this plaintiff, who at that time was at the chapel of the college in the discharge of his duties, as said George well knew; and plaintiff states that at said meeting so called the said George publicly complained of the nonattendance of plaintiff at said meeting.

"Plaintiff states that further in pursuance of said design to injure plaintiff and to punish him on account of his said religious convictions and with the

knowledge and approval of defendant George, the defendant Briggs on the 17th day of April, 1910, in the city of Springfield, Missouri, and from the pulpit of the said St. Paul Methodist Episcopal Church, South, and in the presence and hearing of divers persons, men and women, spoke of plaintiff false, defamatory and injurious language of the substance following:

" 'When a teacher eating the bread of a Christian institution teaches doctrine non-Christian and antagonistic to a personal God; when a man makes use of his position to spread his fad by attempting to proselyte and force his belief upon students, he is either weak here (the said Briggs at the word 'here' striking his head) or wrong here (the said Briggs at the word here tapping his breast), weak-minded or morally dishonest. I say this man has either an ill-balanced intellect, or else is evil disposed. Such a man should be removed from his position. To him should be applied the words, "Fool, when wilt thou learn!" ' the defendant Briggs thereby intending to convey the meaning and charging and thereby conveying the meaning and said meaning being so understood by the auditors, that plaintiff was improperly making use of his position as such teacher in Drury College and attempting to proselyte and attempting to force his belief upon students of said college, all of which was untrue in fact, as the defendants Briggs and George well knew, and intending to charge and to convey the meaning and the said auditors then understood the meaning to be that plaintiff was either weak-minded or morally dishonest and therefore an improper person to occupy the position of instructor of Drury College.

"And plaintiff says this was a part of the general plan of said Briggs and George to stir up such a sentiment as would apparently justify plaintiff's removal as such instructor and with the design to

discredit plaintiff as a teacher and as a man and thereby injure his good name and deprive him of his means of livelihood.

"Plaintiff states that in furtherance of said conspiracy, the said Briggs and George caused said last described so-called sermon and remarks to be published on April 18, 1910, in the Springfield Leader, a newspaper published in Springfield, Missouri.

"Plaintiff states that on April 18, 1910, in furtherance of said design, said Briggs repeated to the said Ministerial Alliance the said language so used in said so-called sermon, he, Briggs, and said George intending and contriving to induce said Alliance to take part in the persecution of said plaintiff and to induce said Alliance to make demands on defendant George and on said Drury College for the removal or retirement of said plaintiff and thus afford an apparent justification for such action by said college, which course it had then determined upon pursuing.

"Plaintiff states that again on April 24, 1910, said Briggs in furtherance of said common design at the said church of which he was pastor preached another so-called sermon on the passage, 'Why do men not like to retain God in their thoughts?' .'If any man even an angel from heaven preach a different Gospel than this let him be accursed,' and made such pretended sermon a pretense for a covert assault upon this plaintiff.

"Plaintiff states that in answer to said repeated assaults, he, plaintiff, published an article in one of the papers of said city of Springfield, in which plaintiff quoted language used by said Briggs of the substance following: 'Rev. Mr. Briggs refers to me as a "scatter-brained" professor of Drury College and says when a man has his head turned by Theosophy he should not use his position as a teacher of Christian thought to form classes in Theosophy for the purpose of proselyting students to his fad.' Plaintiff

states that in answer to said communication and with the knowledge and approval of the defendant George and in furtherance of said design to oppress and injure plaintiff the said defendant Briggs under his own signature and on April 19, 1910, caused to be published in the Springfield Leader, a newspaper published in the city of Springfield, Missouri, and having a large circulation in said city and throughout Southwest Missouri, an article containing the following language: 'The expression he (meaning plaintiff) professed to quote from me, "a scatter-brained professor of Drury College," was not used by me in the sermon preached March 12, 1910. I have never in any public utterance used the name "Drury College" in connection with this case. Further he charges that I said "when a man had his head turned by Theosophy he should not use his position as a teacher of Christian thought to form classes in Theosophy for the purpose of proselyting students to his fad." He must be quoting from someone else, for I cannot recognize the quotation. He is about the last man in Springfield that I would speak of as a leader of Christian thought.'

"Plaintiff states that defendant Briggs in furtherance of said design and by said article and language reiterated that plaintiff was unfit mentally and morally to occupy the position of teacher and thereby charging by the negative pregnant denial that plaintiff is 'scatter-brained' and thereby admitting that he had used and reiterated said language without the use of the words Drury College, and thereby and by the use of said language reflecting upon the standing of plaintiff in Springfield, Missouri.

"Plaintiff further states that in furtherance of said design and intending to hold plaintiff up to contempt as an unfit associate of Masons and thereby intending to cause the removal of plaintiff as such teacher and intending to injure and oppress him on account of his religious convictions in said article of

April 19, 1910, used the following false and injurious language: 'I am sorry to learn he (meaning plaintiff) is a Mason, for Missouri Masonry has passed upon an issue which his case would bring up.' And in said article and for like purpose defendant used the following language: 'Masonry has no place for a man who does not believe in a personal God,' thereby not only improperly referring to Masonry, but implying and so charging the plaintiff an unfit person to be a member of said organization.

"Plaintiff further says that in furtherance of said design and intending to injure plaintiff in said profession, defendant Briggs in said article published the following language: 'I have nothing to do with the affairs of Drury College. Its curators must pass upon the fitness of men for places in its faculty, but as a Christian minister, I am unable to see how any manly man can eat the bread of a Christian college while seeking to undermine the foundation of Christian faith and substituting a fad worn out in India for the well-tried verities of Christian belief,' thereby in furtherance of said design charging plaintiff with being unmanly and with using his position as instructor in Drury College in an underhand and unmanly way and thereby charging plaintiff with violation of his duty to Drury College as said instructor. All of which is false in fact, and all of which was charged with the consent and approval of the defendant George, and with the intent of furnishing a pretext upon which the defendant Drury College could remove plaintiff and a pretext to not further retain him on its faculty on the pretended ground that it would injure said college to retain him.

"Plaintiff states that said defendants still conspiring to injure and defraud plaintiff, but at the same time fearful that their past conduct and declarations might involve said defendants Drury College and J. H. George, in the said Springfield Leader and

in its issue of April 22, 1910, the defendant C. H. Briggs, with the knowledge and at the instigation of his co-defendants, published the following: 'As to my interview with Dr. George, March 12th, it never occurred to me to ask Dr. George to have Professor Darrow removed. All I said to him was it was taken for granted that Drury College would not retain in its faculty a champion of Theosophy any longer than was necessary. Further, I expressed to him the opinion that if Professor Darrow's connection with Drury College should cease with the current year, the ministers of the city would pass no criticism upon the college because of Professor Darrow's conduct. But I told him I had already heard enough to be sure for the college to appeal for patronage as a Christian college and yet continue a teacher of Theosophy in its faculty would awaken a storm of disapproval.'

"Plaintiff states that said article was intended and designed by defendants to furnish a pretext for the removal of plaintiff on the ground that Christian patronage would be withdrawn from said college if plaintiff were retained on its faculty.

"Plaintiff states that at said interview on March 12, 1910, as detailed by said Briggs in the said article of April 22, 1910, said Briggs expressed surprise to said defendant George that he, George, was not acquainted with the teachings of Theosophy as expounded in the book left by plaintiff as aforesaid in the Carnegie Library, and thereupon said Briggs left with the said defendant George garbled, mis-recited quotations from said work and purposely misrepresenting plaintiff as an atheist.

"Plaintiff states that said article was published in furtherance of said design to injure plaintiff and was intended as an appeal to the so-called Christian element of Springfield and vicinity to boycott said Drury College if said plaintiff were retained, and was published as an excuse and as a pretense for the

course already determined upon to dispense with the services of plaintiff as a member of said college faculty on account of his said religious convictions.

"And said garbled extracts from said Theosophical work was published for the express purpose of misrepresenting plaintiff as an atheist and for the express purpose and on understanding between defendants to injure plaintiff on such account.

"Plaintiff states that for the purpose of carrying out said conspiracy and arousing a sentiment against plaintiff if said Drury College should retain him, said Briggs, with the knowledge and consent of his co-defendants in said article of April 22nd, further stated: 'If it (Drury College) asks support as a Christian college it will not carry a champion of Theosophy in its faculty one hour longer than it is compelled to, and these things are so plain to me that it never occurred to me to raise the question as to the stand the college will take in due time.'

"Plaintiff states that on April 29, 1910, in furtherance of said conspiracy to injure plaintiff and to retire him from the faculty of Drury College on account of his religious views, the said George removed plaintiff from the Bible School faculty of said college, upon which plaintiff held the position of professor of Biblical Greek, and assigned as a reason the said controversy with defendant Briggs and at the same time said George stated that plaintiff ought to resign from the faculty of Drury College unless in full sympathy with the Evangelical Christian Ideal.

"Plaintiff states as further steps in said conspiracy to injure plaintiff and to force his retirement on account of said religious views, the said defendant George on said April 29, 1910, and again on May 27, 1910, declared to plaintiff that no one not in full sympathy with Christian Orthodoxy ought to remain upon Drury's faculty.

"Plaintiff states that by and through the machinations of defendants Briggs and George the said Drury College was prevailed upon to join said design to punish plaintiff on account of his religious views and to injure him in his standing as a man and teacher by removing him from its faculty, but said college, mindful of its charter and by-laws which prevented any religious test, and mindful of its membership in said Carnegie Foundation, and the benefits to be derived therefrom, conceived and advised the plan of retiring plaintiff under the plan of a pretended leave of absence.

"And by agreement between said defendants and for such purpose and to carry out such purpose, the defendant George in his own behalf and in behalf of Drury College proposed to plaintiff that the said college would grant plaintiff a leave of absence for a period of four months on full pay and proposed that at the end of said period plaintiff would voluntarily resign.

"For plaintiff states that during the said controversy and at the dates herein named he was a teacher under special contract expressed to be for one year and said period of four months remained of said period of employment.

"Plaintiff states said proposal was orally made to him by said defendant George, but plaintiff states that he refused the same, and as a part of the general plan to discredit plaintiff, the defendant George on June 4, 1910, in a communication given by way of an interview to a newspaper in said city of Springfield, first assumed and stated that plaintiff claimed he, plaintiff, had received a written proposition of such a leave of absence and then in said interview denied that any such proposal was made.

"Plaintiff says that in said interview defendant George charged plaintiff with having made untruthful statements, whereas in truth and in fact such pro-

posal was made and the said interview was had and is a part in the general design to injure and affect the standing of plaintiff and to hold him up to the people of Springfield as unworthy of their confidence and respect and as a man unfit to be an educator.

"Plaintiff states that when he declined said proposal to accept of said leave of absence and declined to voluntarily retire from the faculty of said college, and after said defendant had resorted to all of the aforesaid acts and statements to injure plaintiff, said defendant in furtherance of said common design hereinbefore described and in final consummation thereof removed the plaintiff from the faculty of Drury College.

"Plaintiff states that by the terms of his contract with said Drury College, as is the case of every member of the faculty, the period of his employment as teacher was indeterminate; that is to say, plaintiff was retained for the period of one year with the understanding and agreement that plaintiff would be retained at the discretion of the board of trustees for any period beyond said first year without any formal employment or renewal of said contract and said board by the articles and by-laws of said college could remove after said year any instructor when in the judgment of said board the interest of the college shall require it.

"Plaintiff states as aforesaid that after his refusal to retire, the said Drury College, in furtherance of the said designs and at the instigation of the said Briggs and George, and in final consummation of said conspiracy and intending likewise to humiliate plaintiff and intending to conceal as far as possible the true reasons actuating it, and acting upon a formal communication presented to it by the defendant George in which reference is made to the said controversy between plaintiff and defendant Briggs on the pretended ground that the usefulness of plaintiff

as a professor in said college had been impaired by such controversy, by an official vote and by order of record, refused to retain plaintiff as one of its faculty and addressed to plaintiff the following communication:

" 'At the annual meeting of the board of trustees yesterday, the following resolution offered by the committee on appointment of professors was adopted by the board: "Inasmuch as the articles of association of Drury College require of the trustees that they shall remove any instructor or officer when the interest of the college shall require it, we recommend that the secretary of the board should notify Professor Fritz S. Darrow that in the judgment of the board the interest of the college requires that his term of service should close September 1, 1910, and that he should understand that thereafter he will not be regarded as a member of the faculty." ' And plaintiff states that his official connection with Drury College thus and then ended.

"But plaintiff states that the facts stated in said communication are not true and that in truth and in fact the action of said board was the result of the conspiracy aforesaid to punish and injure plaintiff on account of his religious belief and convictions and that said conspiracy was formed, as alleged, by defendants to so injure the plaintiff and to destroy if possible his standing as a man and educator.

"And plaintiff states that the said Drury College through its said trustees had full knowledge of all the acts, statements and publications of the said Briggs and of the said George, its president, and in all things encouraged and finally ratified the acts of the said president.

"Pursuant to said conspiracy to injure and damage plaintiff and to prevent his re-employment as an educator and in execution thereof, plaintiff states that on the 10th day of July, 1910, as he had previously

done on a number of occasions in execution of said conspiracy, defendant Briggs declared that 'founders and believers in fads were frequently insane,' intending to charge and imply, and his auditors so understood the charge to be that plaintiff was insane as evidenced by his religious convictions.

''Plaintiff states that as a part of the conspiracy and in order to induce and prevail upon the plaintiff to resign from said faculty, the said George falsely represented and pretended that if plaintiff would resign that he, George, and the said Drury College would favor the adoption of resolutions which would fittingly express the worth of plaintiff as an educator and endorse him as a man and as an educator.

''But plaintiff says that after the forced retirement as aforesaid of plaintiff from the said faculty of Drury College, members of the said faculty proposed to adopt resolutions of appreciation of the work of plaintiff as one of their body and expressing regret and sorrow at plaintiff's retirement, but plaintiff says that in furtherance of said conspiracy to injure plaintiff, the defendant George frowned upon and through his influence as president of said college defeated the adoption of such resolutions.

''Plaintiff states that by reason of the premises his religion has been held up to ridicule and that he has been held up to ridicule and contempt and his feelings outraged; that he has been placed in a false position and his religion misrepresented and reviled; that he has been held forth to the people of Springfield, Missouri, and in all places where said papers circulate, as a teacher and defender of principles and views antagonistic to good morals, good government and Christian teaching; that he has been held forth and represented as unmanly and underhanded in his dealings with his fellow man; that he has been held forth unworthy to be a Mason or an educator and unworthy to be classed as either, and that said con-

spiracy was designed and intended to affect and injure and the acts and declarations stated did and do affect and injure his reputation and standing as a man and educator; that by reason thereof he has been humiliated and embarassed in his communication and intercourse with his fellow men and inquiries have been made by institutions of learning of said Drury College and have been ignored as a part of said conspiracy; that he has been ousted from his position as a member of the faculty of said Drury College and retired on charges so vague as to justify unfavorable inferences and demanding explanations whenever and wherever he seeks employment and inquiries have been made by reason of the vagueness of said order of dismissal and that by reason of the premises his standing as an educator has been injured and is injured and he has been compelled to expend large sums of money to employ counsel and has been compelled to expend large sums of money by reason of breaking up his residence in Springfield and being compelled to seek employment elsewhere.

"For all of which plaintiff claims he is damaged in the sum of fifty thousand dollars, for which sum, together with his costs, he prays judgment.

"FRITZ S. DARROW,
"By T. J. DELANEY, Counsel."

Each defendant filed a separate demurrer, setting up the same general grounds, which in substance were: (a) that the petition improperly joined two distinct causes of action, one in contract, the other in tort; (b) that said petition improperly joined several distinct causes of action in one count; (c) that there was a misjoinder of parties and of causes of action in the petition; and (d) because the petition did not state facts sufficient to constitute any cause of action against the defendants. This demurrer being sustained generally by the court as to each and all of the defendants, plaintiff declined to further plead, judg-

ment followed and the case is here upon the sole question of the goodness of the petition.

I. We have been compelled to set out the petition which has been attacked and the goodness of which on demurrer is the sole question to be decided on this appeal. We might well invoke the maxim *res ipsa loquitur,* and after directing specific attention to this petition, affirm this case, in the spirit in which a case was reversed by SHERWOOD, J., once on a time in a matter apposite here by analogy only. [Robinson v. Musser, 78 Mo. 153.]

*Petition: Cause of Action.*

II. Plaintiff in his brief says: "The dismissal of plaintiff without just cause, as it was, is a breach of such contract and would entitle plaintiff to recovery against Drury College." The petition of plaintiff upon the question of whether any action could possibly lie against Drury College for discharging plaintiff from his position therein as a teacher, says:

*Breach of Contract.*

"Plaintiff states that by the terms of his contract with said Drury College, as is the case of every member of the faculty, the period of his employment as teacher was indeterminate; that is to say, plaintiff was retained for the period of one year with the understanding and agreement that plaintiff would be retained at the discretion of the board of trustees for any period beyond said first year without any formal employment or renewal of said contract and said board by the articles and by-laws of said college could remove after said year any instructor when in the judgment of said board the interest of the college shall require it."

It is manifest that under such a contract as plaintiff avers he had with Drury College the latter, through its trustees, was given a very broad discre-

tion to remove the plaintiff from his position as a teacher in that school. This broad discretion is conferred and permission to so discharge him is given by the use of the words "when in the judgment of said board the interest of the college shall require it." [Brookfield v. Drury College, 139 Mo. App. 339.] If plaintiff (and he avers in his petition he did) suffered himself to be drawn into a controversy in the newspapers, in which such intemperate language as he sets out was used by him and by defendant Briggs toward each other, we are not able to say that the removal of plaintiff was an abuse of discretion in the board of trustees. While the petition of plaintiff avers the throwing off of sectarian religious suzerainty by Drury College, and by broad inference charges that it sacrificed its religious connections and convictions for a mess of Carnegie pottage, and while we must deem this true for the purposes of this demurrer, we are yet unable to conceive of the avowal by a college teacher of devotion to a cult. such as Theosophy and a taking up in a newspaper controversy of the cudgels in defense thereof, being anything but hurtful to any college—Girard College not excepted. [See 26 Ency. Brit. 790—Theosophy.] We know, as every one else knows, that those standing *in loco parentis* to students select institutions of learning with some considerable thought of moral training and with some view to. such a religious atmosphere as is common to, and not out of harmony with, some of the recognized religions of the Western Hemisphere. Can it be contended that if Drury College were to announce that one of its teachers was a believer in Buddhism, another a devotee of the creed of the Sun-worshippers, and still another a Mohammedan, that such beliefs and creeds, however popular in the Orient, where they originated, would popularize an institution of learning competing for the privilege of educating western youths? We

261Mo18

do not think there is any doubt that the voluntary acts of plaintiff, as he himself pleads them, of themselves furnished ample cause for his dismissal, and that Drury College violated no contract when it dismissed him. It is beside the question that he may have been dragged, or nagged, as counsel charge, into his unfortunate attitude by the officious intermeddling of a pragmatic zealot. We do not think that any cause of action was stated against Drury College.

III. It is fairly plain that the petition here seeks to charge a conspiracy on the part of the defendants Briggs, George and others who are trustees of Drury College, to bring about the retirement of plaintiff as a teacher of said college. We have seen that the confessed acts of plaintiff considered, the board of trustees of this college had both ample power and legal provocation to discharge plaintiff from his office as teacher therein. In the absence of a statute forbidding conspiracies about a given subject-matter, no legally hurtful, and, *ergo,* no actionable conspiracy could be maintained by defendants toward plaintiff as to a thing which the board was justified in doing upon the facts here without a conspiracy. There are averments of fact as to alleged slanders and libels in the petition which might be sufficient if they were properly pleaded with a proper legal setting, to render defendant Briggs liable to be put upon his defense for actionable utterances. For Briggs, if the petition be true, and we are compelled to so regard it for the uses of this discussion, was guilty of a meddlesome and gratuitous intolerance touching the internal affairs of a school outside of his own church, which, to say the least, was never part or parcel of the example set by the meek and lowly Nazarene whom he professed to follow, and in whose vineyard he was working, and in whose footsteps he

*Conspiracy.*

ought to try to walk. But whether this is so or not we need not and do not now rule.

Be this as it may, the whole trend of all of the other allegations is that defendant George had neither part nor parcel in any such libels or slanders. In fact it is not contended by plaintiff that he took any physical part therein. But plaintiff seeks to render said George liable for these acts of defendant Briggs by a charge of conspiracy. It appears, however, by an averment further along in this petition that "the said Briggs on the 12th day of March, 1910, falsely and maliciously represented and stated to the defendant J. H. George, who was then the president of said Drury College, that plaintiff 'is an atheist and unfit to be an instructor in said Drury College,' then and thereby charging, implying and intending to charge and imply that plaintiff as a so-called atheist was morally unfit to be an instructor. And said Briggs at said time demanded the retirement of plaintiff from said Drury College and threatened a boycott against said college by a body known as the Ministerial Alliance of Springfield." It will be seen that the pleader, after charging a combine and confederation between defendants George and Briggs, here charges Briggs as acting alone and as communicating certain facts to George touching plaintiff's alleged unfitness to be an instructor in said college, and as urging upon George the discharge of plaintiff. Such an averment is of course rankly inconsistent with plaintiff's theory of an actionable conspiracy.

The appellant very seriously contends that learned counsel for defendants have utterly misapprehended his position and his petition. This position, as we gather it from his brief, is that he is not suing for libel or slander, or for a breach of contract, but that his pleading is intended in effect to perform the office of the old action on the case for conspiracy. This position he thus states in his brief:

."As is plainly indicated it is a suit bottomed on an alleged conspiracy which involved breach of contract and slander and libel as means of accomplishment.''

Let us examine whether this position is tenable. An inspection of the petition discloses that defendant George is not charged personally with issuing libels or uttering slanders against plaintiff. The gravamen is that Briggs slandered and libelled the plaintiff in pursuance of an alleged conspiracy between George and Briggs. The animus alleged may be read between the lines. No actual malice toward the plaintiff is charged. But the animus of Briggs we thus infer is due to the frenzy of over-zeal; that of George, to protect and subserve the interests of his school.

Returning to the strict letter of the petition· and viewing it and weighing it as an action on the case for conspiracy, we find that in such an action the rule was stated in the very early case of Hunt v. Simonds, 19 Mo. l. c. 588, thus:

"In a civil action on the case for a conspiracy, the gist of the action is the damage which the plaintiff has sustained by the acts of the defendants, and the allegation of a conspiracy need not be proved. [1 Saund. 230, note 4; Savile v. Roberts, 1 Ld. Raym. 378; Sheple & Warner v. Page, 12 Vt. l. c. 533.] In Hutchins v. Hutchins, 7 Hill, l. c. 107, it is said: 'The conspiracy or combination is nothing, so far as sustaining the action goes; the foundation of it being the actual damage done to the party.' It is upon this ground only that those cases rest, which allow a recovery against one defendant when the others are acquitted.

"As it is the settled law that, in an action on the case in the nature of a writ of conspiracy, the plaintiff may have judgment against one defendant, although he may have no cause of action against the others, we are assisted in determining the character

of the case which will support such action; and the conclusion would seem to be unavoidable, that the action can only be sustained against several, where the acts complained of would sustain an action against one of the defendants; in other words, that the number of the defendants sued, and the allegation that they conspired together, do not authorize the plaintiff to maintain his action, when he could not maintain it against one defendant, if sued alone. In Wellington v. Small, 3 Cush. 1. c. 150, it is said by the Supreme Court of Massachusetts, 'As to the first of these averments (that there was a conspiracy), it may be remarked that, if an act is done by one alone, which is no cause of action, a like act is not rendered actionable by being done in pursuance of a conspiracy. In an action on the case in the nature of a conspiracy, the gist of the action is not the conspiracy (as it is in an indictment, and was in the old writ of conspiracy), but the damage done to the plaintiff.' The only use in charging the conspiracy is, to make the defendants responsible for the acts of each other, done in pursuance of the common design.''

But it is clear from the authorities, and the Hunt case, supra, so holds, that the invocation of the rules as to actions on the case for conspiracy does not relieve plaintiff from the duty of stating a cause of action against Briggs, one of the alleged conspiring tortfeasors. For, says the above excerpt, ''The conclusion would seem to be unavoidable that the action can only be sustained against several where the acts complained of would sustain an action against one of the defendants; in other words, that the number of the defendants sued, and *the allegation that they conspired together do not authorize the plaintiff to maintain his action when he could not maintain it against one defendant, if sued alone.''* (Italics are ours.) This is apparently in line with the holdings of all jurisdictions. [DeWulf v. Dix, 110 Iowa, 553;

Kimball v. Harman, 34 Md. 407; Boston v. Simmons, 150 Mass. 461; Bohn Mfg. Co. v. Hollis, 54 Minn. 223; Martens v. Reilly, 109 Wis. 464; Adler v. Fenton, 24 How. 407.] And the reason for the rule, to-wit, that (absent a statute otherwise providing) *a conspiracy of itself furnishes no cause of action, because from the mere forming of it, no possible damages can accrue,* is not far to seek.

Judged by this rule the petition here is bad. It charges libels published and slanders uttered at divers times to different audiences, and to different readers through different media and under different circumstances, all tangled, mixed and blended in one count. This is bad pleading. [Flowers v. Smith, 214 Mo. l. c. 129; Michael v. Matheis, 77 Mo. App. l. c. 562.] Besides, this petition violates the statutory rule which requires "a plain and concise statement of the facts constituting a cause of action" (Sec. 1794, R. S. 1909), and while conceding that this defect is not one for which by the strict letter of the statute (Sec. 1800, R. S. 1909), a demurrer will lie, yet it has been said that "the pleader is not allowed now, any more than formerly, by inserting doubtful or uncertain allegations in a pleading, to throw upon his adversary the hazard of correctly interpreting its meaning." [Sidway v. Live Stock Co., 163 Mo. l. c. 373.]

Considered from any angle we are convinced that the petition is bad on demurrer; that it is incoherent and presents no tangible or understandable issues; that it is "without form, and void" (Genesis 1:2), and violates almost every known rule of good pleading and that the judgment sustaining a demurrer to it was just and right and ought to be affirmed. Let this be done.

*Walker, P. J.,* and *Brown, J.,* concur.