165 N.J. Super. 84 (1978)
397 A.2d 712
JEWISH CENTER OF SUSSEX COUNTY, PLAINTIFF,
v.
CHAIM WHALE, ALSO KNOWN AS LOUIS R. WOLFISH, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided December 8, 1978.[*]
*86 Mr. Lewis Stein for plaintiff (Messrs. Nusbaum, Stein & Goldstein attorneys).
Mr. Anthony M. Mahoney for defendant (Messrs. Bernstein & Mahoney attorneys).
POLOW, J.S.C.
On this motion for summary judgment, plaintiff Jewish Center of Sussex County seeks rescission of a January 1, 1978 contract pursuant to which defendant was employed as its rabbi and spiritual leader. Plaintiff also demands dismissal of defendant's counterclaim for specific performance and compensatory and punitive damages, which claims are based upon plaintiff's alleged breach. The real issue is whether, during negotiations leading up to execution of the agreement, defendant had a duty to disclose his prior criminal record and disbarment as an attorney and whether his failure to make such disclosures amounts to equitable fraud justifying rescission by plaintiff congregation.
Certain relevant facts have been stipulated. Plaintiff, as a religious corporation, has the responsibility for the conduct of religious services in its synagogue in Newton, New Jersey, and operates a part-time religious school for the children of the congregation. In response to plaintiff's advertisement for a rabbi, defendant submitted his resume. Therein he listed his address, telephone number, place and year of birth, and his education, including a bachelor of arts degree, ordination as a rabbi in 1956 and experience in that calling from 1956 to 1977. The resume further indicated that references would be furnished on request. No such request was made.
After an initial interview defendant conducted Friday night and Saturday morning services at plaintiff's synagogue. On those occasions he met and spoke with many members of the congregation. Following several additional telephone conversations between defendant and an authorized officer of the congregation, the terms and salary were resolved and the parties executed an employment contract dated January *87 1, 1978. The contract provided, among other things, that in addition to a fixed salary the congregation would provide the rabbi with the use of a specified home at no cost, plus necessary utilities and payment of moving expenses.
In April 1978 information came to plaintiff's attention indicating that defendant had also been known as Louis R. Wolfish and that he had been convicted for devising a scheme to defraud an insurance company of $200,000 through the use of the mails. Plaintiff further ascertained that defendant had been disbarred as an attorney in the State of New York for bribing a police officer. These facts are admitted by defendant. Accordingly, plaintiff, by letter dated April 17, 1978, sought to rescind defendant's contract of employment as its rabbi and spiritual leader.
Plaintiff now moves for summary judgment pursuant to R. 4:62-1 and 2. The role of the judge on a summary judgment application, as stated by Justice Brennan in Judson v. People's Bank & Trust Co. of Westfield, 17 N.J. 67, 73 (1954), "is to determine whether there is a genuine issue as to a material fact * * *." Defendant resists the motion, arguing that there are at least two factual issues which require resolution by plenary trial. He first asserts that whether or not his actions constitute fraud requires a determination of intent, his state of mind, which must be resolved as a question of fact and that such a determination is contingent upon whether, also as a matter of fact, there was a duty to disclose. Next, he insists that a factual issue must be resolved to determine whether any such failure to disclose, if it was fraudulent, resulted in damage or prejudice to plaintiff or provided defendant an undue or unconscientious advantage.
Defendant cites Weiland v. Tuckelson, 38 N.J. Super. 239 (App. Div. 1956), for the proposition that generally a party owes no obligation to disclose to another, matters of which such other party has actual or constructive knowledge or as to which both parties' information or means of acquiring information is equal. Defendant asserts by affidavit that the matters which plaintiff urges defendant had a duty to *88 disclose are matters of public record and were readily available to plaintiff for the asking. Weiland is concerned with the establishment of an easement and the reluctance of the court to estop a party from denying that claimed right merely because that party failed to object when certain improvements had been made. That proposition was drawn from an earlier easement decision, Sanders v. Reid, 131 N.J. Eq. 407 (Ch. 1942), in which the court went on to say:
* * * In general, a person is required to speak only when common honesty and fair dealing demand that he do so, and in order that a party may be estopped by silence, there must be on his part an intent to mislead, or at least a willingness that others should be deceived, together with knowledge or reason to suppose that someone is relying on such silence or inaction and in consequence thereof is acting or is about to act as he would not act otherwise. [at 412]
Hence, defendant concludes that his intent in remaining silent and his reason to suppose that plaintiff would be deceived thereby are questions of fact which may not be resolved by summary judgment.
It has long been recognized in this State that arrangements between a pastor and his congregation are matters of contract subject to enforcement in the civil court. Jennings v. Scarborough, 56 N.J.L. 401, 409 (Sup. Ct. 1849). Contracts in general are subject to rescission when they are obtained by fraud. Merchants Indem. Corp. v. Eggleston, 37 N.J. 114 (1962). That fraud may be either legal or equitable. Legal fraud consists of a material misrepresentation of a presently existing or past fact made with knowledge of its falsity, with the intention that the other party rely thereon, and he does so rely to his damage. Louis Schlesinger Co. v. Wilson, 22 N.J. 576, 585-586 (1956); Lopez v. Swyer, 115 N.J. Super. 237, 250 (App. Div. 1971), aff'd 62 N.J. 267 (1973). In equitable fraud knowledge of its falsity is not required. Foont-Freedenfeld Corp. v. Electro Protective Corp., 126 N.J. Super. 254 (App. Div. 1973), 64 N.J. 197 (1974).
*89 The fact that no affirmative misrepresentation of a material fact has been made does not bar relief. The suppression of truth, the withholding of the truth when it should be disclosed, is equivalent to the expression of falsehood. Costello v. Porzelt, 116 N.J. Super. 380, 383 (Ch. Div. 1971). The question under those circumstances is whether the failure to volunteer disclosure of certain facts amounts to fraudulent concealment, or, more specifically, whether the defendant is bound in conscience and duty to recognize that the facts so concealed are significant and material and are facts in respect to which he cannot innocently be silent. Where the circumstances warrant the conclusion that he is so bound and has such a duty, equity will provide relief. Nicholson v. Janeway, 16 N.J. Eq. 285, 287 (Cy. 1863).
Fraud in * * * equity, properly includes all acts, omissions and concealments which involve a breach of legal or equitable duty, trust, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another. [Howard v. West Jersey and Seashore R.R. Co., 102 N.J. Eq. 517, 521 (Ch. 1928), aff'd 104 N.J. Eq. 201 (E. & A. 1928)]
St. John the Baptist Church v. Jenson, 118 N.J. Eq. 467, 494-495 (Ch. 1935).
Professor Pomeroy sums up fraud in equity in his classic work, Equity Jurisprudence, Pt. II, c. III, § 873 at 422, as follows:
The following description is perhaps as complete and accurate as can be given so as to embrace all the varieties recognized by equity; Fraud in equity includes all willful or intentional acts, omissions, and concealments which involve a breach or either legal or equitable duty, trust, by which an undue or unconscientious advantage over another is obtained.
Defendant urges that plaintiff's reliance on the exceptionally sparse resume provided by him, without seeking details of his prior employment or exploring his offer to provide references, gives rise to an issue of material fact concerning whether a duty to disclose existed and whether the *90 plaintiff was prejudiced by his nondisclosure. However, the failure of plaintiff to investigate cannot relieve defendant of the consequences of his own undeniably misleading conduct under the circumstances in failing to disclose obviously material information. See Gallagher v. New England Mut. Life Ins. Co. of Boston, 33 N.J. Super. 128, 136 (App. Div. 1954) aff'd 19 N.J. 14 (1955), in which it was held that where a relationship of utmost good faith exists, or should exist, one who is a recipient of fraudulent misrepresentations is justified in relying upon them, even though he might have ascertained the falsity of the representations had he made an investigation.
The same principle has been most recently restated in Pioneer Nat'l Title Ins. Co. v. Lucas, 155 N.J. Super. 332, 342 (App. Div. 1978), aff'd o.b. 78 N.J. 320 (1978): "`One who engages in the kind of conduct here involved [intentional nondisclosure] may not urge that his victim should have been more circumspect or astute."
If the relationship between insurer and insured requires the existence of utmost good faith, how much more demanding must we be of the ultimate integrity of the parties in the relationship between a pastor and his flock, or a minister and his congregation, or a rabbi and his synagogue? The contract itself speaks of the "spiritual leadership" expected of defendant, not only within the congregation but in the community at large.
Defendant also argues that plaintiff has not been damaged as he is indeed ordained and is fully capable of performing the religious services required by the contract. However, our courts have held that the very existence of a fraudulently procured document causes damage, so that where fraud is found damage may be presumed. See Hagen v. Gallerano, 66 N.J. Super. 319, 332-333 (App. Div. 1961); Landriani v. Lake Mohawk Country Club, 26 N.J. Super. 157, 173 (App. Div. 1953).
The contract here under consideration characterizes the relationship between the congregation and its rabbi as that of a *91 religious community and its chosen spiritual leader in the following statement:
A Rabbi is the spiritual leader of the congregation and as such is called to serve the religious, educational, spiritual and pastoral needs of its membership as well as to serve his congregation through his spiritual leadership in the community at large, both Jewish and non-Jewish.
Concealment by defendant of his criminal record and disbarment undoubtedly can be and probably has already been the source of considerable embarrassment and humiliation to plaintiff's congregation. Under the circumstances plaintiff has no obligation to continue defendant as spiritual leader pursuant to an employment contract procured as a result of defendant's fraudulent conduct.
An Illinois appellate court faced an analogous situation in Fuller v. De Paul Univ., 293 Ill. App. 261, 12 N.E.2d 213 (App. Div. 1938). There plaintiff concealed from defendant university, a well known Catholic institution of higher learning, that some 25 years earlier he had been ordained as a Catholic priest but after 17 years in the priesthood had broken his vows, married, disappeared and suffered a funeral rite, only to be living in Europe and later teaching at another university. That court held as a matter of law that the concealment of material background information vitiated the contract of employment as a teacher:
The concealment by plaintiff that he had been a priest of the Catholic Church, taking the vows of poverty, obedience, and chastity, and had officiated as a priest for many years and had subsequently left the priesthood, marrying and becoming the father of two children and what is termed a "fugitive", amounted to a material and fraudulent misrepresentation. His silence as to these things was a deception which induced defendant to employ him. The general rule is that concealment must relate to a matter material to the transaction involved. As stated in 13 C.J. p. 309 § 294, "It may be stated as a rule that it is always material if, had it been known to be false, the contract would not have been entered into." It is undisputed in the instant case *92 that there would have been no contract of employment if the facts about plaintiff had been known. * * *
The experience of hundreds of years past has shown, that a teacher, to be qualified to perform his duties, must possess such a character that he may be a good example to pupils and create character in them. The teacher must be honest and honorable not performing his duties under the cloak of honesty, but genuine, and beyond suspicion as to his character. The defendant, De Paul University, is surrounded by an unusual religious atmosphere, and to have injected plaintiff, an apostate priest, into this would have been disastrous. In Darrow v. Briggs, 261 Mo. 244, 169 S.W. 118, it was held that the interest of the Congregational College required the removal of a teacher who was out of harmony with the recognized religious atmosphere of the school.
One must conclude that a man of the cloth, hired to give spiritual and religious as well as educational leadership must possess qualifications no less demanding than those described in the foregoing passage.
I find that, as a matter of law, a prior criminal record and disbarment from the practice of law must be disclosed by one seeking a rabbinical post involving the spiritual, religious and educational leadership of a religious congregation. Similarly, I am satisfied that, as a matter of law, failure to disclose such information results in damage and prejudice to the employer congregation and provides an undue, unconscientious advantage to the applicant. Hence, there is no genuine issue as to any material fact challenged. Judson v. Peoples Bank & Trust Co. of Westfield, supra.
Lastly, defendant's claim to rights and privileges as a tenant under our Landlord and Tenant Acts (N.J.S.A. 46:8-1 et seq. and 2A:18-51 et seq.) is without merit. Since the contract itself is void, defendant cannot claim any rights or benefits therefrom. Furthermore, N.J.S.A. 2A:18-61.1(m) allows for removal of a tenant when the tenancy has been conditioned upon the tenant's employment by the landlord.
Plaintiff's motion for summary judgment rescinding the contract and dismissing defendant's claims for specific performance and damages, will be granted.
NOTES
[*] (This opinion is submitted pursuant to R. 2:5-1(b) to amplify the prior oral decision rendered by the court on September 15, 1978.)