166 N.J. Super. 442 (1979)
400 A.2d 78
BEACHCOMBER COINS, INC., PLAINTIFF-APPELLANT,
v.
RON BOSKETT, t/a R & B COINS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 1979.
Decided March 2, 1979.
*444 Before Judges CONFORD, PRESSLER and KING.
Mr. John W. Gilbert argued the cause for appellant.
Messrs. Goldenberg, Mackler & Feinberg, attorneys for respondent (no appearance for argument).
The opinion of the court was delivered by CONFORD, P.J.A.D. (retired and temporarily assigned).
Plaintiff, a retail dealer in coins, brought an action for rescission of a purchase by it from defendant for $500 of a dime purportedly minted in 1916 at Denver. Defendant is a part-time coin dealer. Plaintiff asserts a mutual mistake of fact as to the genuineness of the coin as Denver-minted, such a coin being a rarity and therefore having a market value greatly in excess of its normal monetary worth. Plaintiff's evidence at trial that the "D" on the coin signifying Denver mintage was counterfeited is not disputed by defendant. Although at trial defendant disputed that the coin tendered back to him by plaintiff was the one he sold, the implicit trial finding is to the contrary, and that issue is not raised on appeal.
The trial judge, sitting without a jury, held for defendant on the ground that the customary "coin dealing procedures" were for a dealer purchasing a coin to make his own investigation of the genuineness of the coin and to "assume the risk" of his purchase if his investigation is faulty. The judge conceded that the evidence demonstrated satisfaction of the ordinary requisites of the rule of rescission for mutual mistake of fact that both parties act under a mistake of fact and that the fact be "central" [material] to the making of the contract. The proofs were that the seller had himself acquired this coin and two others of minor value for a total of $450 and that his representative had told the purchaser *445 that he would not sell the dime for less than $500. The principal of plaintiff firm spent from 15 to 45 minutes in close examination of the coin before purchasing it. Soon thereafter he received an offer of $700 for the coin subject to certification of its genuineness by the American Numismatic Society. That organization labelled it a counterfeit, and as a result plaintiff instituted the present action.
The evidence and trial judge's findings establish this as a classic case of rescission for mutual mistake of fact. As a general rule,
* * * where parties on entering into a transaction that affects their contractual relations are both under a mistake regarding a fact assumed by them as the basis on which they entered into the transaction, it is voidable by either party if enforcement of it would be materially more onerous to him than it would have been had the fact been as the parties believed it to be [Restatement, Contracts, § 502 at 961 (1932);[1] 13 Williston on Contracts (3 ed. 1970), § 1543, 74-75]
By way of example, the Restatement posits the following:
A contracts to sell to B a specific bar of silver before them. The parties supposed that the bar is sterling. It has, however, a much larger admixture of base metal. The contract is voidable by B. [Op. cit. at 964]
Moreover, "negligent failure of a party to know or to discover the facts as to which both parties are under a mistake does not preclude rescission or reformation on account thereof." Restatement, op. cit., § 502 at 977. The law of New Jersey is in accord. See Riviere v. Berla, 89 *446 N.J. Eq. 596, 597 (E. & A. 1918); Dencer v. Erb, 142 N.J. Eq. 422, 429 (Ch. 1948). In the Riviere case relief was denied only because the parties could not be restored to the status quo ante. In the present case they can be. It is undisputed that both parties believed that the coin was a genuine Denver-minted one. The mistake was mutual in that both parties were laboring under the same misapprehension as to this particular, essential fact. The price asked and paid was directly based on that assumption. That plaintiff may have been negligent in his inspection of the coin (a point not expressly found but implied by the trial judge) does not, as noted above, bar its claim for rescission. Cf. Smith v. Zimbalist, 2 Cal. App.2d 324, 38 P.2d 170 (D. Ct. App. 1934).
Defendant's contention that plaintiff assumed the risk that the coin might be of greater or lesser value than that paid is not supported by the evidence. It is well established that a party to a contract can assume the risk of being mistaken as to the value of the thing sold. 13 Williston, Contracts, op. cit., § 1543A at 85. The Restatement states the rule this way:
Where the parties know that there is doubt in regard to a certain matter and contract on that assumption, the contract is not rendered voidable because one is disappointed in the hope that the facts accord with his wishes. The risk of the existence of the doubtful fact is then assumed as one of the elements of the bargain. [Restatement, op. cit., § 502, Comment f. at 964. See also Restatement, Contracts 2d, op. cit., § 296(b), Comment c at 4.]
However, for the stated rule to apply, the parties must be conscious that the pertinent fact may not be true and make their agreement at the risk of that possibility. 17 Am. Jur.2d, Contracts, § 145 at 492. In this case both parties were certain that the coin was genuine. They so testified. Plaintiff's principal thought so after his inspection, and defendant would not have paid nearly $450 for it otherwise. A different case would be presented if the seller were uncertain either of the genuineness of the coin or of its value if genuine, and had accepted the expert buyer's judgment on these matters.
*447 The trial judge's rationale of custom of the trade is not supported by the evidence. It depended upon the testimony of plaintiff's expert witness who on cross-examination as to the "procedure" on the purchase by a dealer of a rare coin, stated that the dealer would check it with magnification and then "normally send it to the American Numismatic Certification Service for certification." This testimony does not in our opinion establish that practice as a usage of trade "having such regularity of observance in a * * * trade as to justify an expectation that it will be observed with respect to the transaction in question," within the intent of the Uniform Commercial Code, N.J.S.A. 12A:1-205(2).[2]
The cited code provision contemplates that the trade usage is so prevalent as to warrant the conclusion that the parties contracted with reference to, and intended their agreement to be governed by it. Cf. Manhattan Overseas Co. v. Camden Co. Beverage Co., 125 N.J.L. 239, 244 (Sup. Ct. 1940), aff'd 126 N.J.L. 421 (E. & A. 1941). Our reading of the testimony does not indicate any basis for findings either that this was a trade usage within the Code definition at all or that these parties in fact accepted it as such to the extent that they were agreeing that because of it the sale was an "as is" transaction. Indeed, the same witness testified there was a "normal policy" among coin dealers throughout the United States of a "return privilege" for altered coins.
The foregoing conclusions make it unnecessary for us to discuss plaintiff's alternative contention that the contract was "unenforceable" because it constituted an illegal contract to purchase a counterfeit coin. We regard that position as devoid of merit.
Reversed.
NOTES
[1] No substantial change in the rule was effected by Restatement, Contracts 2d, § 294(1), Tent. Dr. No. 10 (1975) at 10. This provides:

(1) Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 296.
The exceptions in § 296 are not here applicable.
[2] Note, also, that evidence of a trade usage is not admissible unless the offering party gives the other party advance notice to prevent unfair surprise. N.J.S.A. 12A:1-105(6). Plaintiff received no notice that the judge intended to decide this case on the basis of the alleged trade usage.