243 N.J. Super. 328 (1990)
579 A.2d 366
BARRY L. KAHN DEFINED BENEFIT PENSION PLAN, PLAINTIFF,
v.
THE TOWNSHIP OF MOORESTOWN, A MUNICIPAL CORPORATION, DEFENDANT.
Superior Court of New Jersey, Chancery Division Burlington County.
Decided January 30, 1990.
*331 John H. Adler for plaintiff (Gerstein, Cohen & Spevak, P.A., attorney).
William M. Baumgartner, Jr. for defendant (Zink, Brown, Baumgartner & Cutts, attorney).
HAINES, A.J.S.C.
Plaintiff Barry L. Kahn Defined Benefit Pension Plan ("Plan") purchased a Tax Sale Certificate covering an industrial property in the Township of Moorestown on October 25, 1984 *332 for $35,242.32. The Plan paid later taxes assessed against the property covered by the certificate in the total amount of $38,753.39. It has sued to rescind the transaction and for other relief. Moorestown's motion for summary judgment dismissing the complaint was granted. Plaintiff appealed and the Appellate Division, while agreeing with a number of the conclusions reached by this court, remanded the matter for a plenary hearing, believing that the significance of the issues presented required a complete record. That hearing has been held. This opinion addresses all issues; it is a modification of the original opinion but reaches the same conclusion.[1] The complaint must be dismissed.
Barry L. Kahn, trustee of the Plan, was and is a sophisticated investor in Tax Sale Certificates. He testified that he has invested in several hundred certificates commencing in 1980, spending substantial amounts of money for the purpose. He purchases certificates with the expectation that they will be redeemed but, prior to redemption, will produce an income of as much as 18 percent (depending on the bidding at the tax sale) plus an additional 2 percent if foreclosure is undertaken. N.J.S.A. 54:5-38. These expectations have been met in nearly every instance.
Prior to the date of the tax sale in question Kahn spoke to the Moorestown Tax Collector and inquired as to why taxes had not been paid on the property. The Collector advised him that the land was occupied by a special use building, that the company owning it had moved south because of labor costs. The Collector showed Kahn the Township assessment book which reflected an assessed value for the property of $700,000. He also advised Kahn that the average Moorestown assessment represented approximately 80 percent of true value. It now appears that the property is contaminated with hazardous materials *333 and is the subject of investigations by the United States Environmental Protection Agency and the New Jersey Department of Environmental Protection although no environmental lien of any kind has been filed. Documents submitted indicate that clean-up costs may amount to as much as $1.9 million. Prior to the Plan's payment of the taxes accruing after the sale the Tax Collector advised Barry Kahn of rumors concerning the contamination. The Plan nevertheless paid the later taxes.
The Appellate Division posed the following question in its opinion supporting the remand:
The difficult question thus presented is whether an affirmative misrepresentation made by a municipal official of the value of property subject to a tax certificate with the intent to conceal information known to him as to the realistic potential that a Spill Fund lien will be placed on the property, relied upon by the acquirer, constitutes a sufficient basis for recision and restitution.
The only representations made by the Collector to Kahn are those set forth in the preceding paragraph of this opinion.
Over the years, commencing as early as 1974, various Township officials received notice of contamination involving the property. The Township Manager, the Deputy Township Manager, the Building Inspector and personnel in the municipal health department were aware of contamination concerns prior to 1984. None of these concerns were communicated to the Tax Collector. It is an uncontradicted fact that he did not know of any supposed contamination of the property prior to the date of the tax sale in question. Kahn claims, however, that the knowledge of the other municipal officials must be imputed to the Township, that its failure to disclose to Kahn its knowledge concerning contamination prior to the tax sale is a basis for the requested relief.
The Plan alleges fraud, equitable fraud, mutual mistake, violation of the Environmental Cleanup Responsibility Act ("ECRA"), N.J.S.A. 13:1K-6 et seq. and violation of the Consumer Fraud Act, N.J.S.A. 56:8-2 et seq. The complaint demands judgment rescinding the sale, returning all taxes and interest to the plaintiff, awarding treble damages under the *334 Consumer Fraud Act, counsel fees and costs and such additional relief as the court deems "equitable, just and appropriate".

A. The Tax Sale Law.

Unpaid real estate taxes become a lien against assessed properties which must be sold to enforce the lien. N.J.S.A. 54:5-19 et seq. Purchasers at tax sales acquire only a tax lien, not title to the property. They receive Tax Sale Certificates which can be foreclosed. The process is described in Gasorek v. Gruber, 126 N.J. Super. 511, 315 A.2d 706 (App.Div. 1974):
A tax sale certificate does not operate to give the purchaser thereof title to the land and does not divest the tax delinquent owners of their title. It merely vests the purchaser of the tax sale certificate with an inchoate right or interest and gives him the right to proceed to foreclose the equity of redemption pursuant to the established statutory scheme. Clark v. Jersey City, 8 N.J. Super. 33, 37 [73 A.2d 197] (App.Div. 1950). Municipal liens are statutory in origin and rights arising therefrom are fixed and determined by the statute creating them. [126 N.J. Super. at 515, 315 A.2d 706]
Owners may redeem their properties by paying purchasers of Tax Sale Certificates all monies paid by them including subsequent taxes, with interest. N.J.S.A. 54:5-54 to 76. If the property is not redeemed within the statutorily prescribed period, the owners of the Certificates may foreclose and obtain title. N.J.S.A. 54:5-27 to 114.10. To date, the property covered by the Plan's Certificate has not been redeemed from the tax sale and the Certificate has not been foreclosed. In the course of a 1987 tax sale Moorestown itself acquired a Tax Sale Certificate covering the property. No subsequent sales have been held.
A private owner of a Tax Sale Certificate has no right to possession of the property covered by the Certificate. Only a municipal certificate owner has that right. Brewer v. Porch, 53 N.J. 167, 179, 249 A.2d 388 (1969). The introductory statement to Assembly Bill No. 1815, now N.J.S.A. 54:5-39, underlines the point:
[Prior to foreclosure of the equity of redemption] the purchaser has no right of entry on the property and has no right to the rents, issues and profits *335 therefrom. Brewer v. Porch, 53 N.J. 167 [249 A.2d 388] (1969). In fact, a claim to such right to possession or rents would constitute a criminal offense. N.J.S. 2A:111-23. (N.J.S. 2A:111-23 has been repealed.)
Thus, neither Moorestown, which did not own a Tax Sale Certificate covering the property until 1987, nor the Plan had any right to the possession of the property in question prior to the 1984 tax sale. For that reason, neither had the right to inspect it for the purpose of determining its physical condition.

B. Fraud.

The elements of fraud are set forth in New Jersey D.E.P. v. Ventron Corp., 94 N.J. 473, 468 A.2d 150 (1983):
... [T]he elements necessary to prove fraudulent concealment on the part of a seller in a real estate action are: the concealment or nondisclosure by the seller of a material fact or defect not readily observable to the purchaser, with the buyer relying upon the seller to his detriment. [citations omitted; at 503, 468 A.2d 150]
It is the Plan's claim that Moorestown knowingly concealed facts concerning the polluted condition of the property from Kahn. Unquestionably, there was no "knowing concealment" by the Moorestown Tax Collector. Kahn's theory of fraud rests upon the claim that the information obtained by other Township officials must be imputed to the Township which had an obligation of disclosure. He contends that he relied on the Township's silence. Plaintiff cites a fraudulent conveyance case and three tort cases to support its theory of imputed knowledge and disclosure. These cases are not appropriate in a tax sale setting.
If the plaintiff's fraud theory is accepted, every Tax Sale Certificate would be subject to the same claim. Every rumor, every report of a property defect made to or by a construction official, every suspected zoning-planning violation and every claimed breach of the health laws known to a municipal official would be attributed to the municipality and concealed, even by an unknowing tax collector, at his or her peril. The result would impermissibly frustrate the tax sale system in place in *336 every municipality in the State. It would make the title of every tax sale certificate uncertain.
Purchasers of tax sale certificates in New Jersey buy at their own risk. In the present case the Appellate Division said: "In these transactions caveat emptor should be the rule." Purchasers are not expected to have and are not entitled to have any intimate knowledge concerning the condition of any particular property offered at tax sale. The most they can expect to learn about properties offered for sale must be learned from curb-side inspections, an examination of public records and fortuitous facts produced by any inquiries that they happen to make. The municipalities selling tax sale certificates cannot be expected to have or to divulge any particular information about the condition of tax sale properties. In most cases their officials have no ability to inspect such properties. They cannot be expected to verify most rumors. Any representations made at tax sales concerning property conditions would be made at some risk; such representations, necessarily incomplete, would raise liability and title questions.
Furthermore, in the present case Kahn did not justifiably rely upon the failure of the municipality to disclose the condition of the property. "Justifiable reliance or reasonable reliance as an essential element of fraud places the burden on plaintiff." National Premium Budget Plan Corp. v. National Fire Ins. Co., 97 N.J. Super. 149, 205, 234 A.2d 683 (Law Div. 1967), aff'd 106 N.J. Super. 238, 254 A.2d 819 (App.Div. 1969). The trial court in National Premium, 97 N.J. Super. at 209, 234 A.2d 683, quoted the Restatement, Torts, sections 525 and 537 ("Deceit; Business Transactions") which permit recovery by the recipient of a misrepresentation in a business transaction only if reliance upon the misrepresentation was "justifiable". The same court also quotes Prosser on Torts (2d ed. 1955): sec. 89 "Not only must there be reliance, but the reliance must be found to be justifiable under the circumstances." See also DSK Enterprises, Inc. v. United Jersey Bank, 189 N.J. Super. *337 242, 251, 459 A.2d 1201 (App.Div. 1983), cert. den. 94 N.J. 598, 468 A.2d 232 (1983). Kahn was a sophisticated purchaser of Tax Sale Certificates. He knew that he did not know many facts concerning properties covered by the Tax Sale Certificates which he purchased. He bought knowing that the conditions of properties sold at tax sale might significantly and negatively affect value. He did not rely; he risked.
The Legislature recognized the need for protecting municipalities against claims such as the one made here when enacting the Tort Claims Law. N.J.S.A. 59:7-2 provides:
Neither a public entity nor a public employee is liable for an injury caused by:
(a) Instituting any judicial or administrative proceeding or action for or incidental to the assessment or collection of a tax.
(b) An act or omission in the interpretation or application of any law relating to a tax.
The immunity thus conferred has been construed to apply only to discretionary and not to ministerial acts. Tontodonati v. Paterson, 229 N.J. Super. 475, 482, 551 A.2d 1046 (App.Div. 1989). Some aspects of a tax sale proceeding may be ministerial but any obligation to disclose information about the condition of properties sold, assuming an obligation exists, is surely discretionary and therefore within the immunity provisions of the statute.

C. Equitable Fraud.

The Plan also relies upon a theory of equitable fraud. Equitable fraud, while fraud, does not require knowledge of the concealed material fact. Jewish Center of Sussex County v. Whale, 165 N.J. Super. 84, 397 A.2d 712 (Ch.Div. 1978), aff'd 172 N.J. Super. 165, 411 A.2d 475 (App.Div. 1980), aff'd 86 N.J. 619, 432 A.2d 521 (1981), held:
Legal fraud consists of a material misrepresentation of a presently existing or past fact made with knowledge of its falsity, with the intention that the other party rely thereon, and he does so rely to his damage. In equitable fraud knowledge of its falsity is not required. [citations omitted; at 165 N.J. Super. 88, 397 A.2d 712]
The same reasons that deny any right to recover for fraud deny Kahn's right to recover for equitable fraud.

*338 D. Mutual Mistake.

The Plan's alternative claim to recision rests upon a theory of mutual mistake as set forth in Beachcomber Coins, Inc. v. Boskett, 166 N.J. Super. 442, 400 A.2d 78 (App.Div. 1979):
[W]here parties on entering into a transaction that affects their contractual relations are both under a mistake regarding a fact assumed by them as the basis on which they entered into the transaction, it is voidable by either party if enforcement of it would be materially more onerous to him than it would have been had the fact been as the parties believed it to be. [at 445, 400 A.2d 78]
Simon v. Oldmans Twp. 203 N.J. Super. 365, 497 A.2d 204 (Ch.Div. 1985) supports this contention. In that case, the plaintiff, after purchasing a Tax Sale Certificate, discovered that environmental problems affected the property making it likely that the State would obtain a "super lien" pursuant to the Spill Act. The Court held:
The only practical rule to follow may, in fact, be no rule at all. It is to hold, and this court does so hold that the critical issue for determination is whether, under the facts in a given case, a reasonably prudent acquirer of a tax certificate knows or ought to know of the potential existence of a spill act claim. If he knows  or should know  he is entitled to no relief. On the other hand, if there is no lien of record and a reasonable prudent inquirer would have no reason to suspect the same, then this court will rescind the contract and place the parties in statu quo ante ...
The court is of the opinion that, if there were no representations of any kind made by defendants, rescission should be granted. Clearly, given the nature of this transaction and the amount of money involved, the potential existence of a super lien constituted a material fact. If neither party were aware of any environmental problems which would give rise to a super lien, then the case is a classic example of mutual mistake. [at 375, 497 A.2d 204]
The reasoning of the court in Simon must be respected; it need not be followed by this court of equal jurisdiction. It is my considered opinion that I should not do so.
If Simon is correct, every municipal tax sale is suspect. The sale of any property having material physical defects unknown to buyer and seller and therefore undisclosed may be set aside. Polluted soil, unsound construction, a leaky roof, an unsafe electrical system, worn out plumbing, insect infestation and any of a myriad of other defects will jeopardize sales.
*339 Neither the municipal seller nor the individual buyer has a practical way to obtain information about the physical condition of properties sold at tax sales. Neither (in most cases) is entitled to possession and therefore cannot inspect. It would not be realistic to expect municipalities to undertake the extensive inspection, reporting and disclosure requirements a different rule would require. They would become guarantors. The fact is that buyers of tax liens, frequently bargain hunters, are expected to buy a pig in a poke. The law does not provide them with warranties or guarantees or special protection of any kind. Caveat emptor is the rule. It cannot be otherwise if the public, the intended beneficiary of our tax sale system, is to be protected. As Justice Jacobs, dissenting in Dvorkin v. Dover Twp. 29 N.J. 303, 327, 148 A.2d 793 (1959), said: "It seems to us that, if for any reason the traditional quitclaim sales are ever to be converted into warranty sales with their consequent financial burdens on municipalities, the Legislature may properly be expected to do so in unequivocal terms."
A distinction must be made, as Moorestown argues, between a property sale and a tax sale. The tax sale purchaser acquires only a lien which may be foreclosed and title thereby acquired. Perhaps an unknown material fact relating to the tax sale itself will permit the recision of a tax sale on the ground of mutual mistake, but that is not the rule with respect to the condition of the underlying property.
Furthermore, the mutual mistake rule, as set forth in Beachcomber, requires both parties to be "under a mistake regarding a fact assumed by them as the basis on which they entered into the transaction". [166 N.J. Super. at 445, 400 A.2d 78] Moorestown did not assume any fact regarding the condition of the property in question and there was no reason for Kahn, representing the Plan, to do otherwise. Simon, in fact, supports no different conclusion. It permits relief only to "a reasonable prudent inquirer" who has "no reason to suspect ...." [at 375, 497 A.2d 204] Kahn, as a "reasonable prudent inquirer", was obliged to assume, as a matter of law, that *340 the condition of the property was unknown, that the rule of caveat emptor applied. He has no basis for arguing now that a mutual mistake was made.

E. The Environmental Cleanup Responsibility Act.

The Plan also claims that the tax sale must be voided because Moorestown failed to comply with the Environmental Cleanup Responsibility Act. That Act, provides, in N.J.S.A. 13:1K-13(a):
Failure of the transferor to comply with any of the provisions of this act is grounds for voiding the sale or transfer of an industrial establishment or any real property utilized in connection therewith by the transferee, entitles the transferee to recover damages from the transferor, and renders the owner or operator of the industrial establishment strictly liable, without regard to fault, for all cleanup and removal costs and for all direct and indirect damages resulting from the failure to implement the cleanup plan.
The claim is based upon a misunderstanding of the nature of a tax sale transaction. The sale here did not effect a transfer of real property; it transferred only a lien. Consequently, the Act does not apply.

F. The Consumer Fraud Act.

The Plan further claims that the tax sale of the property, made without disclosure of the pollution problem, violated the Consumer Fraud Act. That Act provides:
The Act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate ... is declared to be an unlawful practice.... N.J.S.A. 56:82-2.
Assuming, without deciding, that the Act applies to tax sales, reliance thereon is misplaced. The Plan bought only a Tax Sale Certificate. There is no defect in the Certificate or in any of the proceedings involved in its sale. The Certificate was the only "merchandise" sold and no impropriety occurred in connection with that sale. No real estate was sold.

*341 G. The Statutory Bar.

N.J.S.A. 54:5-52 provides:
The certificate of sale shall be presumptive evidence in all courts in all proceedings by and against the purchaser, his representatives, heirs, and assigns, of the truth of the statements therein, of the title of the purchaser to the land therein described, and the regularity and validity of all proceedings had in reference to the sale. After two years from the record of the certificate of sale, no evidence shall be admitted in any court to rebut the presumption, unless the holder thereof shall have procured it by fraud, or had previous knowledge that it was fraudulently made or procured.
Moorestown contends that since more than two years have elapsed since the Plan's Tax Sale Certificate was recorded and this suit commenced, the statute bars any recovery. This contention cannot be supported.
The statute is designed to protect the purchaser of a Tax Sale Certificate, not the municipality. It says so, referring to "all proceedings by and against the purchaser...." N.J.S.A. 54:5-52. The cases applying the statute so hold. They deal only with efforts to redeem properties from the lien of Tax Sale Certificates. See Community Development Co., Inc. v. Seaside Gardens, Inc., 7 N.J. 153, 81 A.2d 14 (1951); Bayonne v. Ferenczi, 49 N.J. Super. 100, 139 A.2d 315 (App.Div. 1958); Hyland v. Kirkman, 204 N.J. Super. 345, 498 A.2d 1278 (Ch.Div. 1985).

CONCLUSION
The complaint has no basis in law. It must be dismissed.
NOTES
[1] For purposes of clarity and convenience, all conclusions reached in the first opinion are repeated here, notwithstanding the apparent affirmance of most of them by the Appellate Division.