272 N.J. Super. 21 (1994)
639 A.2d 328
BETTY SIMON, JAKE SIMON, MARSHA ZELL, U.D.T., RICHARD SIMON, GRANTOR, ASSIGNOR AND J & M LAND COMPANY, ASSIGNEE, PLAINTIFFS-APPELLANTS,
v.
DEPTFORD TOWNSHIP, DEFENDANT-RESPONDENT, AND BELL HARBOR CORP., JOSEPH ESPOSITO AND HARRY KATZ, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 15, 1993.
Decided March 14, 1994.
*23 Before Judges SHEBELL, LONG and LANDAU.
Keith A. Bonchi argued the cause for appellants (Goldenberg, Mackler & Sayegh, attorneys).
Eugene McCaffrey, Jr. argued the cause for respondent (Albertson, Ward & McCaffrey, attorneys, Robert T. Orr, on the brief).
Fred Stickel, attorney for New Jersey State League of Municipalities (Ralph J. Kmiec, on the brief).
The opinion of the court was delivered by LONG, J.A.D.
*24 By our leave, plaintiffs, Betty Simon, Jake Simon, Marsha Zell, U.D.T., Richard Simon, Grantor, Assignor and J & M Land Company, Assignee, appeal from the trial judge's refusal to rescind their purchase of a tax sale certificate covering a piece of property in Deptford Township known as block 1.2, lot 1. Plaintiffs contend that they discovered after the purchase that the property had previously been used as a landfill, and that a permit for discharge of pollutants had been issued by the Department of Environmental Protection (DEP) to the prior owners. Thus, they claim entitlement to rescission based upon mutual mistake and/or fraud.

I
The case arose in September 1987 when Deptford Township (Township) issued a public notice for the tax sale of 270 properties. Prior to the sale, plaintiffs' agent, Herman Zell, made a curbside inspection of the property which was owned by Bell Harbor Corp. However, plaintiffs made no inquiry prior to the date of the sale concerning the environmental condition of the property.
On October 14, 1987, plaintiffs purchased Tax Sale Certificate No. 4867-87, covering block 1.2, lot 1 for $6,543.06. Plaintiffs were represented at the sale by Zell. At the sale, Zell asked the Township's tax collector, Joyce Michaels, if there were any environmental problems with any of the properties; according to Zell's deposition, Michaels responded that she did not know. In a subsequent certification, Zell stated that Michaels responded that she was "not aware of any problems." In her deposition, Michaels agreed that she was not aware of any environmental problem with any of the properties that she had put up for tax sale. According to Michaels, it is not her practice to conduct an investigation into the status of any property upon which a tax lien is being sold, other than to note that the property owner is delinquent in the payment of taxes.
On April 27, 1988, the Simons, Zell and U.D.T. assigned the tax sale certificate to plaintiff, J & M Land Company, a corporation *25 which has purchased approximately 800 certificates over a ten-year period, and in which certain plaintiffs are shareholders and/or directors. Taxes on the property were paid for the 1987, 1988 and 1989 tax years, and for the first quarter of 1990.
Through their own investigation, plaintiffs first learned of environmental problems on the property in September 1990. Apparently the property had at one time been utilized as a landfill. Plaintiffs also discovered that in 1985, the DEP had issued a groundwater discharge permit to Bell Harbor. Notice of this was apparently sent by the DEP to the Township mayor in 1985 via certified mail.
On June 20, 1991, plaintiffs filed a complaint in lieu of prerogative writs seeking nullification of the tax sale. The Township answered and the first two counts of plaintiffs' complaint which sought relief only against the Township were bifurcated from the counts against the record owners. Cross-motions for summary judgment were filed. The trial judge ruled in favor of the Township. In so doing, he concluded that:
the rule of caveat emptor applies to the sale by municipalities of tax title liens. The purchaser is often a speculator, seeking a high return investment (18%) or a potentially substantial capital profit. It is a venture which carries some risks. This was the case here. The prospective purchaser is free to conduct whatever searches, inquiry and investigation he deems appropriate before entering into the transaction. No misrepresentation was made by the tax collector of the Township of Deptford. If Plaintiffs relied upon her alleged statement that she was not aware of any environmental problems, such reliance was not justifiable. Therefore, Plaintiffs' misrepresentation claim must fail.
We granted plaintiffs' motion for leave to appeal.
On appeal, plaintiffs argue that the tax sale should be rescinded on the grounds of mutual mistake because neither the tax official nor the purchasers were aware of environmental problems on the property. Alternatively, they argue that the Township's knowledge of the environmental status of the property should be imputed to the tax collector, thus warranting denial of summary judgment on the issue of fraud.
The Township counters that the grant of summary judgment was proper because the doctrine of caveat emptor, not mutual *26 mistake, is applicable, and because the record fails to disclose an issue of material fact with respect to whether the Township committed fraud. The Township also argues that plaintiffs are estopped from asserting any defect with respect to the subject property because of the lapse of time involved and the Township's reliance thereon.

II
A purchaser at a tax sale acquires only a tax lien, not title to the property; if the property is not redeemed within the statutorily prescribed period, the owner of the certificate may foreclose and obtain title. Barry L. Kahn Defined Benefit Pension Plan v. Township of Moorestown, 243 N.J. Super. 328, 334, 579 A.2d 366 (Ch.Div. 1990). Thus, the holder of a tax sale certificate has an inchoate interest consisting of three significant rights: the right to receive the sum paid for the certificate with interest at the redemption rate for which the property was sold; the right to redeem from any other holder a subsequently issued tax sale certificate; and, as noted, the right to acquire title by foreclosing after the expiration of two years from the date of sale. Township of Jefferson v. Block 447A, Lot 10, 228 N.J. Super. 1, 4-5, 548 A.2d 521 (App.Div. 1988). Municipal liens are statutory in origin and the rights arising therefrom are fixed and determined by the applicable statute. Brewer v. Porch, 53 N.J. 167, 173, 249 A.2d 388 (1969). The legislative objective of allowing the sale or assignment of tax liens is to enable local governments to realize taxes by returning property to the paying tax rolls without first expending money to foreclose or bar the equity of redemption. Dvorkin v. Dover Township, 29 N.J. 303, 311, 148 A.2d 793 (1959). This is the backdrop against which the issues in this case must be decided.

III
We turn first to plaintiffs' claim of entitlement to rescission based on the doctrine of mutual mistake which has been described as follows:

*27 where parties on entering into a transaction that affects their contractual relations are both under a mistake regarding a fact assumed by them as the basis on which they entered into the transaction, it is voidable by either party if enforcement of it would be materially more onerous to him than it would have been had the fact been as the parties believed it to be.
[Beachcomber Coins, Inc. v. Boskett, 166 N.J. Super. 442, 445, 400 A.2d 78 (App.Div. 1979) (citation omitted).]
Two conflicting trial court decisions have issued on the subject of mutual mistake in connection with the purchase of a tax sale certificate. In Simon v. Oldmans Township, 203 N.J. Super. 365, 497 A.2d 204 (Ch.Div. 1985), plaintiff sought rescission of the purchase of three tax sale certificates and restitution of the purchase price on the ground that the township solicitor withheld information and misrepresented the facts surrounding the subject property during the public tax sale. Subsequent to the purchase, plaintiff learned of environmental problems associated with the property. As a result of these problems, plaintiff was informed that the State was asserting a "super lien" for the clean-up of toxic wastes on the property, pursuant to the Spill Compensation and Control Act. Id. at 369-70, 497 A.2d 204. The trial judge held that the critical issue for determination in such a case is whether a reasonably prudent acquirer of a tax sale certificate knows or ought to know of the potential existence of an environmental claim. If there were no representations of any kind made by defendants, the judge ruled that rescission should be granted on the ground of mutual mistake because neither party was aware of any environmental problems which would give rise to a super lien. The judge held that the matter was inappropriate for summary judgment because of the factual issue presented by plaintiff's allegation that the township solicitor represented, at the time of the sale, that the township was not aware of any environmental problems associated with the property. Id. at 375-76, 497 A.2d 204.
A different analysis issued in Barry L. Kahn Defined Benefit Pension Plan, 243 N.J. Super. 328, 579 A.2d 366. There, plaintiff, described by the court as a sophisticated investor in tax sales certificates, who had invested in several hundred certificates, purchased a tax sale certificate in 1984 covering an industrial property, and later paid taxes on the property. Prior to payment *28 of the taxes, plaintiff was advised by the township tax collector of rumors concerning the contamination of the property with hazardous materials. It was subsequently determined that the property was contaminated and was the subject of investigations by the EPA and the DEP, although no environmental lien of any kind had been filed. It turned out that over the years prior to the sale of the tax certificate and as early as 1974, various township officials, including the township manager, the deputy township manager, the building inspector and personnel in the health department, received notice of and were aware of contamination on the property. However, this information was not communicated to the tax collector prior to the date of the tax sale. Plaintiff argued that this knowledge must be imputed to the township, and that its failure to disclose to plaintiff its knowledge concerning the contamination prior to the tax sale required rescission of the sale on the grounds of fraud and mutual mistake.[1] 243 N.J. Super. at 331-33, 579 A.2d 366.
With respect to mutual mistake, the trial judge in Kahn refused to follow Simon:
It would not be realistic to expect municipalities to undertake the extensive inspection, reporting and disclosure requirements a different rule would require. They would become guarantors. The fact is that buyers of tax liens, frequently bargain hunters, are expected to buy a pig in a poke. The law does not provide them with warranties or guarantees or special protection of any kind. Caveat emptor is the rule. It cannot be otherwise if the public, the intended beneficiary of our tax sale system, is to be protected....
A distinction must be made ... between a property sale and a tax sale.... Perhaps an unknown material fact relating to the tax sale itself will permit the rescission of a tax sale on the ground of mutual mistake, but that is not the rule with respect to the condition of the underlying property.
[Id. at 339, 579 A.2d 366 (citation omitted).]
The trial judge noted that, in any event, mutual mistake was not applicable to the case because neither party assumed any fact regarding the condition of the property in question. Ibid.
*29 We agree with the mutual mistake analysis in Kahn and hold that, as a general rule, the doctrine of mutual mistake should not apply in the tax sale context where no representations are made. Under such circumstances it cannot be said that either party assumed any particular fact as a basis for the transaction. What the issue boils down to is who should bear the risk of facts discovered after the tax sale which have an impact on the value of the property. In our view, the burden devolves on the buyer of the certificates who has the obligation to make such investigations as are necessary prior to the sale. This conclusion will have a salutary effect on the stability of the tax sale system which has the public purpose of allowing municipalities to realize tax payments without undergoing the rigors and costs of foreclosure. It is particularly important because of the expansiveness of the scope of the mutual mistake doctrine which can be applied in a wide variety of instances without regard to the nature of the municipality's conduct or the experience of the purchaser.
Finally, it is worth repeating that the rights of a purchaser of a tax sale certificate are entirely statutory and not equitably based. Northfield City v. Zell, 12 N.J. Tax 180, 185 (1991). The Legislature could have granted purchasers statutory mutual mistake protection had it seen fit to do so.

IV
We turn next to plaintiffs' allegations of fraud. Fraud in a real estate transaction is the deliberate concealment or nondisclosure by the seller of a material fact or defect not readily observable to the purchaser, with the buyer relying upon the seller to his detriment. Department of Envtl. Protection v. Ventron Corp., 94 N.J. 473, 503, 468 A.2d 150 (1983). Here, as the trial judge correctly noted, "[t]he record is devoid of any evidence which would suggest that the tax collector had any knowledge of any environmental problems or potential environmental problems on the subject property at the time of the tax sale or at any time prior thereto." It is conceded that the tax collector is the only *30 person who was consulted by any representative of plaintiffs. Plainly then there is no fact from which plaintiffs can suggest a misrepresentation, deliberate concealment or non-disclosure by the tax collector.
Nor is there support for plaintiffs' contention that Township officials deliberately kept the tax collector in the dark concerning environmental problems on the property and that their knowledge should be imputed to her. Plaintiffs' sole evidence on this point is that several years prior to the tax sale the Township received documents indicating that the prior owner had been issued a groundwater discharge permit from the DEP and that the property had been used as a landfill. No DEP official was deposed for the purpose of establishing the import of a groundwater discharge permit nor was any other evidence presented on that subject. Nor was the Township official who received the information that the permit issued deposed by plaintiffs. Likewise, what that official understood the permit to mean and what he or she did with that information is not revealed in this record. Thus, exactly what was known by persons holding official positions at the time of the tax sale, if anything, was never developed by plaintiffs. It follows that there was not a shred of evidence to support plaintiffs' conspiracy of silence theory. As such, no genuine issue of material fact was advanced which would have warranted denial of defendant's motion for summary judgment on the issue of fraud.
We note that this ruling is driven entirely by the facts of this case and should not be viewed as our agreement with Kahn or with the trial judge that the doctrine of caveat emptor applies to bar a fraud claim in the tax sale certificate context. Nothing about a tax sale per se, or about the fact that it is a speculative venture, in any way undercuts the potential viability of a documented fraud claim. The facts to support a fraud claim were simply not presented here. Thus, the trial judge's grant of summary judgment on the issue of fraud must be affirmed.
Affirmed.
NOTES
[1] Other grounds alleged by plaintiff were equitable fraud, violation of Environmental Cleanup Responsibility Act and the Consumer Fraud Act. None of these grounds are alleged by plaintiffs in this case.