27 A.3d 973 (2011)
422 N.J. Super. 169
NAVILLUS GROUP, General Partnership, and Jim Sullivan, Inc., Plaintiffs-Respondents,
v.
ACCUTHERM INCORPORATED and Philip J. Giuliano, Defendants, and
State of New Jersey Department of Environmental Protection, Defendant-Appellant, and
Township of Franklin, Defendant-Respondent.
Navillus Group, General Partnership, and Jim Sullivan, Inc., Plaintiffs-Respondents,
v.
Accutherm Incorporated and Philip J. Giuliano, Defendants, and
State of New Jersey Department of Environmental Protection, Defendant-Respondent, and
Township of Franklin, Defendant-Appellant.
Nos. A-4754-08T1, A-0568-09T1.
Superior Court of New Jersey, Appellate Division.
Submitted January 25, 2011.
Decided August 11, 2011.
*974 Paula T. Dow, Attorney General, attorney for appellant (A-4754-08)/respondent (A-0568-09) State of New Jersey, Department of Environmental Protection (Lewis A. Scheindlin and Melissa H. Raksa, Assistant Attorneys General, of counsel; Mark D. Oshinskie, Deputy Attorney General, on the brief).
Maley & Associates, attorneys for appellant (A-0568-09)/respondent (A-4754-08) Township of Franklin (M. James Maley, Jr., Emily K. Givens, and Erin E. Simone, on the brief).
Hyland Levin, attorneys for respondents Navillus Group, General Partnership, and Jim Sullivan, Inc. (Richard M. Hluchan, of counsel and on the brief; Robert S. Baranowski, Jr., on the brief).
Goldenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi & Gill, attorneys for amicus curiae (A-0568-09) The Tax Collectors and Treasurers Association of New Jersey (Keith A. Bonchi, Atlantic City, and Rosann Allen, on the brief).
Before Judges YANNOTTI, ESPINOSA and SKILLMAN.
The opinion of the court was delivered by
SKILLMAN, J.A.D. (retired and temporarily assigned on recall).
The issue presented by this appeal is whether the Industrial Site Recovery *975 Act (ISRA), N.J.S.A. 13:1K-6 to -14,[1] establishes an alternative ground upon which a party who has obtained a final judgment in a tax foreclosure action under the Tax Sale Law, N.J.S.A. 54:5-1 to -137, may secure relief from the judgment based on environmental contamination of the site. We conclude that the Tax Sale Law provides the exclusive grounds upon which a tax foreclosure judgment may be vacated. Therefore, we reverse the judgment of the trial court that relied upon ISRA in vacating a tax foreclosure judgment.

I.
During the period between 1984 and 1992, defendant Accutherm engaged in the manufacture of laboratory-grade thermometers on its property, which is located in Franklin Township, Gloucester County. As part of this manufacturing operation, Accutherm stored twenty to twenty-five pounds of mercury on the site.
In 1988, the Department of Environmental Protection (DEP) determined that there were industrial pollutants, including mercury, in Accutherm's septic system. Consequently, the DEP directed Accutherm to pump its septic system.
In 1990, the Occupational Safety and Health Administration (OSHA) conducted two investigations, evidently in response to employees' complaints of illness, and discovered mercury vapor levels on the site that exceeded OSHA limits. Accutherm attempted to address this problem by renovating its ventilation system, but was not able to conform to OSHA standards.
Due to the cost of compliance with DEP and OSHA requirements, Accutherm ceased operations in 1992 without performing a cleanup of the mercury contamination on its property. In 1994, Accutherm filed a bankruptcy petition, but apparently was never discharged from bankruptcy due to the environmental problems at the Franklin Township site.
After becoming insolvent, Accutherm stopped paying real estate taxes, and Franklin Township sold a tax sale certificate to a bank. However, the bank did not take any steps to foreclose on that certificate.
In 1995, the DEP requested the Environmental Protection Agency (EPA) to inspect the site to determine its eligibility for a federally-funded cleanup. This request resulted in two visits to the site by EPA inspectors, who subsequently issued a report, dated January 16, 1996, entitled "Mini Pollution Report." The EPA inspectors reported that they had found 500 to 1000 thermometers in boxes and on shelves, which appeared to be intact. The inspectors also found small amounts of mercury on the floor, on a countertop, and in a vial. The inspectors' testing of "wipe samples" from fourteen locations revealed two that exceeded the DEP's mercury limits. Based partly on its finding that the building, which was not in active use at the time, was "structurally sound and secure," the inspectors concluded that "the site does not present an immediate threat to human health or the environment."
The DEP subsequently determined, relying upon the EPA inspectors' findings, that the Accutherm site was not a priority for cleanup and placed it on the Known Contaminated Site List, designated as "pending assignment."
In 1997, Franklin Township sold a second tax sale certificate for the property to the same bank to which it had sold the first certificate.
*976 In 1999, Franklin Township sold a third tax sale certificate for the property to plaintiff Navillus, which subsequently also acquired the first two certificates by assignment from the bank. Navillus is a partnership consisting of members of the Sullivan family.
The tax sale notice that led to Navillus's purchase of the third tax sale certificate stated in part:
Certificate purchasers are herewith advised, pursuant to N.J.S.A. 13:1K-6, THAT INDUSTRIAL PROPERTY MAY BE SUBJECT TO THE "Environmental Clean Up Responsibility Act," the "Spill Compensation and Control Act" or the "Water Pollution Control Act."[2]
Before Navillus purchased the third tax sale certificate, Franklin Township provided one of Navillus's principals with the summary section of the EPA "Mini Pollution Report."
Navillus subsequently brought an action for foreclosure of the tax sale certificates under the Tax Sale Law, and on June 11, 2001, the trial court entered a final tax foreclosure judgment vesting title to the Accutherm site in Navillus. After entry of this judgment, Navillus conveyed title to plaintiff James Sullivan, Inc. (JSI), a corporation owned by James Sullivan, Jr., for the nominal sum of one dollar.
In late 2003, JSI leased the property to "Kiddie Kollege" for $2000 per month for use as a daycare center. The site was used for this purpose for the next two-and-a-half years.
On May 4, 2006, the DEP sent a letter to JSI, which stated that "several environment issues exist at the [Accutherm] site," including the presence of mercury at levels above DEP limits, and asked JSI to provide the DEP "with documentation which outlines what measures, if any, have been undertaken to remediate these environmental concerns."
In response, JSI hired an environmental consulting firm to conduct tests of air quality on the site, which revealed mercury vapor concentrations far in excess of the DEP's limits. Immediately thereafter, the daycare center was closed. Since then, numerous actions have been filed against Kiddie Kollege, JSI, Navillus, and Franklin Township alleging that the children who attended the daycare center and its employees suffered personal injuries as a result of their exposure to mercury within the facility.
On August 29, 2006, JSI signed an administrative consent order agreeing to remediate the site in accordance with the Spill Compensation and Control Act (Spill Act), N.J.S.A. 58:10-23.11 to -23.11z.[3] However, JSI subsequently refused to perform any remediation.
Navillus and JSI brought this action seeking to void the judgment in the tax foreclosure action under which title to the Accutherm property had been vested in Navillus and to revert title to Accutherm. The complaint named Accutherm, its president and sole shareholder Philip J. Giuliano, Franklin Township, and the DEP as defendants. Franklin Township filed a counterclaim for a declaration that the final judgment in the tax foreclosure action *977 had vested title to the property in Navillus and extinguished the interest of prior title holders, including Accutherm. The DEP moved to dismiss the complaint on the ground that plaintiffs' action was a preemptive attempt to avoid possible liability under the Spill Act.
After denying the DEP's motion to dismiss and motions for summary judgment, the trial court conducted a one-day bench trial. Thereafter, the court issued a written opinion which concluded that plaintiffs were entitled to vacation of the judgment in the tax foreclosure action based on a provision of ISRA under which the failure of a transferor of an industrial site to remediate environmental contamination before the transfer is grounds for voiding the transaction, N.J.S.A. 13:1K-13. Franklin Township filed a motion for reconsideration, which the court denied by an oral opinion.[4] An amended final judgment was entered memorializing the trial court's rulings vacating the 2001 tax foreclosure judgment in Navillus's favor and reverting title to Accutherm.
The DEP and Franklin Township filed separate appeals from this judgment. We now consolidate the appeals.

II.
Before addressing the merits, we first consider plaintiffs' argument that Franklin Township lacks standing to pursue this appeal because the final judgment does not require the Township to return the money Navillus paid for the third tax sale certificate or provide any other relief against the Township. This issue does not have any practical importance because plaintiffs do not dispute the DEP's right to pursue its appeal and the DEP presents substantially the same arguments as the Township.
In any event, we are satisfied that Franklin Township is sufficiently aggrieved by the judgment to pursue its appeal. Although the judgment does not require the Township to return the money Navillus paid for the third tax sale certificate or invalidate the certificate, it vacates the judgment in the tax foreclosure action vesting title in Navillus and the subsequent conveyance of title to JSI, which is presumably solvent, and reverts title to Accutherm, which is insolvent. Thus, one of the effects of the judgment is to transfer responsibility for the payment of current taxes from a party who could and presumably would have paid them to a party who apparently lacks the capacity and has no motive to pay them. See N.J.S.A. 54:5-39 (providing that the owner of property, not the tax sale certificate holder, has duty to pay taxes). Consequently, the Township presumably would have to again sell a tax certificate (assuming the environmental contamination is now sufficiently remediated to make the certificate saleable) in order to collect the real estate taxes that have accrued between entry of the judgment vacating the foreclosure and the eventual return of the property to the tax rolls.
Moreover, the Township is a codefendant with plaintiffs and others in personal injury actions brought by children who attended the daycare center and its employees. It is impossible at this juncture *978 to determine what significance, if any, plaintiffs' title to the property, or the trial court's findings in adjudicating that title, could have in those actions, but it may be reasonably expected that plaintiffs will attempt to rely in some manner upon the judgment in this action in defending those actions.
Therefore, we conclude that, under this State's liberal rules of standing, Franklin Township is sufficiently aggrieved by the judgment to pursue this appeal. See Howard Sav. Inst. of Newark v. Peep, 34 N.J. 494, 499-500, 170 A.2d 39 (1961).

III.
The determination whether a party who has obtained title to real property by a judgment in a tax foreclosure action may secure relief from that judgment under ISRA requires us to review the provisions of the Tax Sale Law under which the title was obtained. Under that Law, a "municipality sells its lien for past due taxes on property at a public sale [in the form of a tax sale certificate] and obtains the amount owed plus interest and the costs of the sale." Simon v. Rando, 374 N.J.Super. 147, 152, 863 A.2d 1078 (App.Div.2005), aff'd, 189 N.J. 339, 915 A.2d 509 (2007). "If the certificate is not redeemed within two years of the sale, the purchaser may file a complaint to foreclose the right of redemption and, if the certificate is not redeemed by a party before the date set in the court's order of redemption and entry of final judgment, obtain an absolute, indefeasible estate in fee simple." Ibid.
Most relevant to this appeal, the Tax Sale Law strictly limits the right of a party to seek vacation of a final judgment in a tax foreclosure action:
The judgment shall be final upon the defendants, . . . and no application shall be entertained to reopen the judgment after three months from the date thereof, and then only upon the grounds of lack of jurisdiction or fraud in the conduct of the suit.

[N.J.S.A. 54:5-87 (emphasis added).][5]
Although these strict limits appear to be directed primarily at the defendants to a tax foreclosure action, there is no basis either in the language of N.J.S.A. 54:5-87 or public policy for construing them to be inapplicable to the party who brought the action. If the holder of a tax sale certificate has concerns about possible environmental contamination or any other reason for delaying acquisition of fee simple ownership, it may simply defer filing a foreclosure action until it conducts whatever investigation is required to allay those concerns. See Simon v. Deptford Twp., 272 N.J.Super. 21, 29, 639 A.2d 328 (App.Div.), certif. denied, 137 N.J. 310, 645 A.2d 139 (1994). But once the tax certificate holder pursues a tax foreclosure action to judgment, it is bound by the policy of finality embodied in N.J.S.A. 54:5-87.
Plaintiffs did not present grounds for vacating the tax foreclosure judgment vesting title in Navillus to the Accutherm property that could satisfy the strict requirements of N.J.S.A. 54:5-87. They did not seek that relief until more than five years after entry of the tax foreclosure judgment, which was far beyond the three-month limit established by this section, and they did not allege "lack of jurisdiction or fraud in the conduct of [the tax foreclosure action]." N.J.S.A. 54:5-87.
This brings us to the question presented by the appeal, which is whether the Legislature intended in enacting ISRA to *979 establish an alternative ground upon which a party who has obtained a final judgment in a tax foreclosure action may secure relief from that judgment under ISRA even though the party would not be entitled to relief under N.J.S.A. 54:5-87.
The section of ISRA plaintiffs rely upon as authorization for seeking such relief is N.J.S.A. 13:1K-13, which provides in pertinent part:

Failure of the transferor to perform a remediation and obtain department approval thereof as required pursuant to the provisions of this act is grounds for voiding the sale or transfer of an industrial establishment or any real property utilized in connection therewith by the transferee, . . . and renders the owner or operator of the industrial establishment strictly liable, without regard to fault, for all remediation costs and for all direct and indirect damages resulting from the failure to implement the remedial action workplan. A transferee may not act to void the sale or transfer of an industrial establishment or any real property except upon providing notice to the transferor of the failure to perform and affording the transferor a reasonable amount of time to comply with the provisions of this act.
[Emphasis added.]
Plaintiffs argue that the owner of an industrial establishment which falls into arrears in the payment of real estate taxes and whose property is the subject of a tax foreclosure judgment is a "transferor" and that the acquisition of title in accordance with that judgment is a "transfer" of an industrial establishment or real property utilized in connection therewith within the intent of this section. In support of this argument, plaintiffs rely upon the definition of "transferring ownership or operations" in ISRA, which includes "any transaction or proceeding through which an industrial establishment undergoes a change in ownership." N.J.S.A. 13:1K-8 (emphasis added). Plaintiffs argue that a tax foreclosure action is a "proceeding" that results in a "change in ownership" of the industrial establishment from the defaulting payer of real estate taxes to the tax sale certificate holder that brought the foreclosure action, and consequently, that party may "void" the transfer under N.J.S.A. 13:1K-13 based on the defaulting taxpayer's failure to remediate the site.
We reject this argument and conclude that N.J.S.A. 13:1K-13 does not establish an alternative procedure to the one set forth in N.J.S.A. 54:5-87 under which a party who has secured a judgment in a tax foreclosure action may vacate that judgment. We reach this conclusion for three reasons.
First, ISRA specifically deals with the effect of the sale of a tax sale certificate upon a property owner's obligations under ISRA to remediate the site. N.J.S.A. 13:1K-9.1 provides:
Upon the date set for the sale of a tax sale certificate . . . for failure to pay taxes . . . on property on which an industrial establishment is located, the owner or operator of that establishment shall be deemed to be planning to close operations pursuant to [ISRA], and the sale of the tax sale certificate . . . shall have the same effect as a public release of a decision to close operations.
Under this provision, the obligation of the owner of an industrial establishment who has defaulted in the payment of real estate taxes to remediate environmental contamination on the site is triggered by the sale of a tax certificate, N.J.S.A. 13:1K-9(b)(1), and continues thereafter, N.J.S.A. 13:1K-12. Thus, this obligation does not first arise when the holder of a tax sale certificate forecloses upon the property, nor is it *980 discharged by foreclosure. Instead, the "closing" event upon which ISRA obligations to remediate the site are based is solely the sale of the tax sale certificate. Consequently, there is no basis in N.J.S.A. 13:1K-9.1 for treating a tax foreclosure judgment as a "transfer or sale" within the intent of N.J.S.A. 13:1K-13.
Moreover, ISRA contains detailed provisions concerning the rights and responsibilities of municipalities in foreclosing upon the right to redemption of properties on which industrial establishments are located, N.J.S.A. 13:1K-9.2 to -9.6, which are superimposed upon their rights and responsibilities under the Tax Sale Law. If the Legislature had also intended in enacting ISRA to confer additional rights and responsibilities upon private parties who purchase and foreclose upon tax sale certificates, it could reasonably have been expected, in light of the detailed procedures governing the sale and foreclosure of tax certificates set forth in the Tax Sale Law, to have specifically spelled out those rights and responsibilities. However, ISRA does not include any provisions comparable to N.J.S.A. 13:1K-9.2 to -9.6 relating to the rights and responsibilities of private parties who purchase and foreclose upon tax sale certificates, which supports the conclusion that those rights and responsibilities continue to be governed solely by the Tax Sale Law.
Second, an expansive interpretation of N.J.S.A. 13:1K-13, under which a party that has foreclosed upon a property with unremediated environmental contamination could invalidate the tax foreclosure judgment, would not promote the policies designed to be served by ISRA. One of the objectives of ISRA is "to secure the cleanup of [contaminated] industrial sites at the earliest possible date." In re Adoption of N.J.A.C. 7:26B, 128 N.J. 442, 447, 608 A.2d 288 (1992). To accomplish this objective, ISRA imposes a duty upon "[t]he owner or operator of an industrial establishment planning to close operations or transfer ownership or operations" to promptly notify the DEP of that intent, N.J.S.A. 13:1K-9(a), and then to "remediate the industrial establishment," N.J.S.A. 13:1K-9(b)(1). To obtain the DEP's approval of a plan for such remediation, the owner or operator must identify a "remediation funding source" for the work. N.J.S.A. 13:1K-9(c). We have described these statutory provisions as "imposing a self-executing duty to remediate without the necessity and delay of a determination as to liability for the contamination." Superior Air Prods. Co. v. NL Indus., Inc., 216 N.J.Super. 46, 63, 522 A.2d 1025 (App.Div.1987). If the seller of a property on which an industrial establishment was located fails to discharge this obligation, N.J.S.A. 13:1K-13 authorizes the purchaser to void the sale.
However, this statutory scheme for early remediation of contaminated industrial sites is unlikely to operate effectively in circumstances where the owner has allowed payment of real estate taxes to go into default, tax sale certificates to be sold, and the certificates to be foreclosed. In such circumstances, the property owner is essentially abandoning the property and, as in this case, often will be insolvent and therefore incapable of providing a "remediation funding source." See Simon v. Cronecker, 189 N.J. 304, 320, 915 A.2d 489 (2007) (noting that the Tax Sale Law "recognizes that a property owner who has not redeemed a tax certificate by the time a foreclosure action has commenced is likely in desperate financial circumstances"). Consequently, the self-executing system for the remediation of contaminated industrial sites provided under ISRA will not result in remediation in this kind of situation.[6]
*981 Third, the acceptance of plaintiffs' expansive interpretation of N.J.S.A. 13:1K-13 would conflict with one of the essential objectives of the Tax Sale Law, which is "to quickly return to the tax rolls . . . property on which [unpaid property taxes] have remained in default." Town of Phillipsburg v. Block 1508, Lot 12, 380 N.J.Super. 159, 162, 881 A.2d 749 (App.Div.2005). The tax foreclosure judgment in Navillus's favor returned the Accutherm property to the tax rolls, first under Navillus's and later under JSI's name, both of which were solvent companies that were capable of paying, and presumably did pay, real estate taxes on an ongoing basis. However, the effect of the judgment reverting title to Accutherm is to release JSI from the responsibility of paying real estate taxes and instead to return this responsibility to Accutherm, which is insolvent and thus presumably will again default in the payment of real estate taxes. Such a default would retrigger the cycle of a sale of a tax sale certificate for the property (assuming the property is now sufficiently remediated for a certificate to be saleable), waiting the two-year period before foreclosure required by N.J.S.A. 54:5-86, and then another foreclosure of the property, which would disserve the policies sought to be achieved by the Tax Sale Law.
Even if plaintiffs had no reason to believe that the Accutherm site was contaminated when they foreclosed upon the tax sale certificatesand the statement in the tax sale notice that an industrial property could be subject to environmental cleanup responsibilities and the description of possible environmental contamination on the site in the part of the EPA "Mini Pollution Report" sent to plaintiffs by the Township should have at least alerted them to this possibilitythe Tax Sale Law places "the risk of facts discovered after the tax sale which have an impact on the value of the property" on the purchaser of the tax sale certificate. Simon, supra, 272 N.J.Super. at 29, 639 A.2d 328 (emphasis in original). As the court observed in Barry L. Kahn Defined Benefit Pension Plan v. Twp. of Moorestown, 243 N.J.Super. 328, 339, 579 A.2d 366 (Ch.Div.1990):
The fact is that buyers of tax liens, frequently bargain hunters, are expected to buy a pig in a poke. The law does not provide them with warranties or guarantees or special protection of any kind. Caveat emptor is the rule. It cannot be otherwise if the public, the intended beneficiary of our tax sale system, is to be protected.
There is no reason to construe N.J.S.A. 13:1K-13 as creating an exception to these well-established principles under the Tax Sale Law.
For all these reasons, we conclude that the Tax Sale Law provides the exclusive grounds for vacating a tax foreclosure judgment and that the trial court erred in ruling that N.J.S.A. 13:1K-13 provides an alternative ground for such relief. Accordingly, the judgment of the trial court is reversed, and the case is remanded to *982 that court for further proceedings in conformity with this opinion.
NOTES
[1] ISRA, which was enacted in 1993, L. 1993, c. 139, superseded the Environmental Clean-up Responsibility Act, which had been enacted in 1983, L. 1983, c. 330.
[2] Such notice to purchasers of tax sales certificates is mandated by the second sentence of N.J.S.A. 13:1K-9.4. The specific form of this notice was prescribed by the Division of Local Government Services, Department of Community Affairs, which licenses and supervises tax collectors, see N.J.S.A. 40A:9-145.1 to -145.12, in Local Finance Notice CTC-96-1.
[3] There is no issue before us concerning the effectiveness of this administrative consent order.
[4] The trial court's written opinion could be read to rest its decision in plaintiffs' favor partly on a common law theory of mutual mistake. However, the court made it clear in its oral opinion on the Township's motion for reconsideration and in the amended final judgment that its decision rests solely on N.J.S.A. 13:1K-13. Plaintiffs' arguments on appeal also appear to rest solely on N.J.S.A. 13:1K-13, and in any event, it is clear that a common law theory of mutual mistake could not provide a basis for vacating a judgment entered under the Tax Sale Law. R. 2:11-3(e)(1)(E).
[5] The In Rem Tax Foreclosure Act, N.J.S.A. 54:5-104.29 to -104.75, which is a subpart of the Tax Sale Law, contains a similar provision, N.J.S.A. 54:5-104.67.
[6] We note that although the DEP apparently intends to bring proceedings to require plaintiffs to remediate the Accutherm site, the DEP relies upon the Spill Act rather than ISRA as the foundation for plaintiffs' alleged remediation obligation. This position is clearly indicated by the DEP's brief in support of its motion to dismiss filed in the trial court, which stated:

Plaintiffs argue at length that they are not responsible parties under ISRA. This argument fails because the Spill Act, not ISRA, defines who is liable for hazardous substance contamination. The plaintiffs are clearly liable for the contamination under the Spill Act.